In re Robert S. **KJERULF** and Linda Kjerulf, Debtors.

**Bankruptcy No. 387–01028–P12.**

United States Bankruptcy Court, D. Oregon.

Nov. 25, 1987.

Mark B. Comstock, Salem, Or., for objecting creditor Santiam Valley Bank.

Victor W. VanKoten, Hood River, Or., for debtors.

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

Debtors, who are dairy farmers, petitioned for relief under Chapter 12 of the Bankruptcy Code, 11 U.S.C. §§ 1201 *et seq.*[1] This case is before the court on an objection by Santiam Valley Bank (SVB), an undersecured creditor, to confirmation of the debtors' Third Amended Plan. SVB objects to debtors' plan because it provides for zero or nominal payments to unsecured creditors.[2]

## FACTUAL BACKGROUND

Debtors' plan proposes to modify the payment terms of the following secured creditors:

| Creditor | Amount of Alleged Secured Claim[3] | Amt. of Mo. Payment | Interest Rate | Payout Period[4] |
|---|---|---|---|---|
| Marion County | $ 15,405 | $ 343.89 | 12% | 5 years |
| Mr. & Mrs. Beach | $114,332 | $1,122.00 | 11% | 24.92 years |
| Farmers Home Administration | $ 87,591 | $ 835.00 | 11% | 29.83 years |
| Ford Motor Co. | $ 1,726 | $ 27.00 | 12% | 8.58 years |

The debtors will satisfy the claims of the other secured creditors by either paying them according to the original contract terms or by surrendering their collateral to them.

Debtors do not propose to pay a specific amount or percentage to unsecured creditors. Instead, the plan provides that:

All dividends payable to debtors hereafter during the term of this plan by mar-

---

1. This is a core proceeding over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(L). All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, unless otherwise specified.

2. SVB originally raised several objections to confirmation of debtors' plan. By the conclusion of the last confirmation hearing the parties present agreed that the only issues remaining to be decided were the issues addressed by this opinion.

3. The amount of the alleged secured claim is determined utilizing debt amounts from debtors' schedules, Supplemental Debtors' Memorandum filed August 26, 1987, and the value of the security specified in debtors' Third Amended Plan. If the alleged value of the security is less than the alleged debt, the value of the security establishes the amount of the alleged secured claim. § 506(a).

4. The court calculated the payout period utilizing information available in the record.

keting entities are a dividend to unsecured creditors. To the extent Debtors (sic) cash surplus existing as of Sept. 30, 1992 (which is currently projected — $60) exceeds $0, the excess will be paid to unsecured creditors as a dividend.

Debtors' yearly budget of income, expenses, debt repayment, and ending cash balance is as follows:

| Year | Income | Expenses | Debt Repayment | End Cash Balance |
|---|---|---|---|---|
| 1 | $276,024 | $212,551 | $37,946 | $25,527 |
| 2 | $422,427 | $331,929 | $70,918 | $19,580 |
| 3 | $427,280 | $331,929 | $79,019 | $16,332 |
| 4 | $418,407 | $331,929 | $79,019 | $ 7,459 |
| 5 | $419,884 | $340,925 | $79,019 | $ 0 |

## ISSUES

(A) Whether, under § 1225, the court may confirm a Chapter 12 plan that provides for zero percent or nominal repayment to unsecured creditors?

(B) If so, whether the plan proposed by debtors has been proposed in good faith?

## SUMMARY OF THE PARTIES' ARGUMENTS

SVB argues that a zero percent or nominal repayment plan cannot meet the good faith requirement of § 1225(a)(3) because debtors' use of the "liberal"[5] discharge provisions of Chapter 12 without proposing any payment to unsecured creditors is outside the spirit and purpose of the chapter. They argue that the good faith standard should include a requirement of meaningful payments to unsecured creditors.

Debtors argue that the plan is proposed in good faith, citing as support *In re Goeb*, 675 F.2d 1386 (9th Cir.1982), which held that a Chapter 13 plan need not provide for substantial repayment of unsecured claims in order for it to meet the good faith test.

They note that their plan provides that any disposable income over the amount necessary for payment of secured and priority claims will be paid to unsecured creditors, and that payments on secured debt have been reduced as low as possible so as to maximize the dividend to unsecured creditors. In addition, payments on priority claims have been stretched to five years without interest. Debtors contend that these plan provisions indicate good faith.

## LEGAL ANALYSIS

A. A Chapter 12 plan which provides nominal repayment to unsecured creditors can be confirmed.

■ Section 1225(a)(3) provides that the court shall confirm a plan if, among other things, it "has been proposed in good faith and not by any means forbidden by law." "Good faith" is not defined in the Bankruptcy Code. There are only two reported decisions that address whether the Chapter 12 good faith standard includes a requirement that a proposed plan provide for meaningful or substantial repayment to unsecured creditors. In both cases, the

---

**5.** The discharge provisions of § 1228 are not as liberal as those in Chapter 13. § 1328. A Chapter 12 debtor is discharged "of all debts provided for by the plan ... except any debt ... of the kind specified in section 523(a) of this title." 11 U.S.C. § 1228(a)(2). Section 523(a) excepts from discharge debts that fit into ten different categories. In contrast, a Chapter 13 debtor is discharged "of all debts provided for by the plan ... except any debt provided for under section 1322(b)(5)," and any debt for child or spousal support. 11 U.S.C. § 1328(a)(1). Thus, the Chapter 12 provisions for discharge of debts are

similar to those in a Chapter 7 case and do not include the liberal discharge provisions available to a successful Chapter 13 debtor. The only advantage a Chapter 12 debtor has over a Chapter 7 debtor vis a vis discharge and dischargeability is that a Chapter 12 debtor who completes his plan is entitled to a discharge even though, if he had filed his petition under Chapter 7, he would be denied a discharge under § 727(a). There is no evidence before the court that the debtors would be denied a discharge in a Chapter 7 or even face an objection to discharge.

courts, in dictum, state that a Chapter 12 plan may provide that unsecured creditors will receive nominal or no payment. *In re Big Hook Land & Cattle Co.,* 77 B.R. 793 (Bankr.D.Mont.1987); *In re Citrowske,* 72 B.R. 613 (Bankr.D.Minn.1987).

Chapter 12 was closely modeled after existing Chapter 13, with alterations of provisions that are inappropriate for family farmers. H.R.Conf.Rep. No. 958, 99th Cong., 2d Sess. 48, *reprinted in* 1986 U.S. Code Cong. & Admin.News 5227, 5246, 5249. Therefore, because the Chapter 12 good faith provision is identical to § 1325(a)(3), Chapter 13 cases addressing the issue of zero or nominal repayment plans provide guidance.

In *In re Goeb, supra,* the Ninth Circuit Court of Appeals reviewed a Chapter 13 repayment plan that provided for one percent payments to unsecured creditors. In concluding that § 1325(a)(3) does not require Chapter 13 debtors to provide for substantial repayment of unsecured creditors, the court noted that Congress did not specifically define "good faith," and that absent some compelling reason, it hesitated to infer from the term an inflexible repayment requirement. Judge Choy, writing for the panel, stated that, "[h]ad Congress wished to require all Chapter 13 debtors to substantially repay unsecured creditors, it could have spoken explicitly." *In re Goeb, supra,* 675 F.2d at 1388. The court also considered that Congress explicitly set a minimum repayment level in § 1325(a)(4), which provides that the amount to be paid on unsecured claims cannot be "less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7. . . ." The court declined to impose a substantial repayment requirement, concluding:

> we believe that the proper inquiry is whether the [debtors] acted equitably in proposing their Chapter 13 plan. A bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner. Though it may consider the substantiality of the proposed repayment,

the court must make its good-faith determination in the light of *all* militating factors.

675 F.2d at 1390 (emphasis in original; footnote omitted).

*Goeb* was decided in 1982. In 1984, Congress amended § 1325 by adding subsection (b)(1)(B), which allows the court to confirm the plan over the objection of the trustee or the holder of an allowed unsecured claim only if "the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." Bankruptcy Amendments and Federal Judgeship Act of 1984, 11 U.S.C. § 1325(b)(1)(B) (1984). Congress is presumed to be aware of court decisions interpreting its provisions. *E.g., Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 382 n. 66, 102 S.Ct. 1825, 1841 n. 66, 72 L.Ed.2d 182 (1982). In 1984 Congress considered § 1325 and added the disposable income subsection. It did not impose the further condition that a plan provide for substantial repayment of unsecured debts, or that a plan cannot be confirmed if it contains a zero or nominal repayment plan. Accordingly, the *Goeb* decision is not adversely affected by the 1984 amendments; indeed, the amendment reinforces the court's conclusion that a plan is not per se proposed in bad faith solely because it contains a provision for nominal repayment to unsecured creditors.

In *Goeb,* the court considered a nominal repayment plan, not a zero repayment plan, and it specifically reserved judgment on the legality of zero-payment plans under Chapter 13. 675 F.2d at 1389 n. 5. In *In re Whitehead,* 61 B.R. 397 (Bankr.D.Or.1986), the Bankruptcy Court for the District of Oregon relied on *Goeb* in approving a Chapter 13 plan that did not provide for any payment to unsecured creditors. It considered that the plan committed all of the debtors' projected disposable income to payments under the plan for a period of 58 months and that the plan otherwise met the requirements of § 1325, and concluded

that, despite the absence of planned repayments to unsecured creditors, the plan had been filed in good faith and should be confirmed. 61 B.R. at 400.

The approach taken by Judge Hess in the *Whitehead* decision is consistent with that taken recently by the Court of Appeals for the Ninth Circuit. The Court held:

> The fact that [a Chapter 13] provides for no payments to unsecured creditors is not sufficient to conclude that the plan was submitted in bad faith.... Congress directed in 11 U.S.C. § 1325(a)(4) that the amount to be paid on unsecured claims in a Chapter 13 plan need only be as much as the unsecured creditors would have received under Chapter 7.... The law requires that all of a debtor's projected disposable income be applied to make payments under a Chapter 13 plan. 11 U.S.C. § 1325(b)(1)(B) (1984 Supp.)

*In re Metz,* 820 F.2d 1495, 1498–1499 (9th Cir.1987).

Because § 1225 does not contain a specific requirement for substantial repayment, and in light of the judicial interpretation of the parallel statute, § 1325, which predated enactment of § 1225, I conclude that § 1225 does not require a debtor to propose substantial repayment of unsecured debt. Chapter 12 imposes the same requirements as those considered relevant in the Chapter 13 cases: § 1225(b)(1)(B) provides that the court may not approve a plan over the objection of the trustee or an unsecured creditor unless the plan provides that all of debtor's projected disposable income to be received during the life of the plan will be applied to make payments under the plan, and § 1225(a)(4) provides that the court shall confirm the plan if the value of the property to be distributed under the plan to unsecured creditors is not less than they would receive under a Chapter 7 liquidation.

As in considering whether to confirm a Chapter 13 plan, the court should consider various factors when deciding whether a Chapter 12 plan is filed in good faith, including whether the debtor has proposed repayment of unsecured debts. Failure to provide payments to unsecured creditors is not, as debtors argue, irrelevant. However, the fact that a debtor proposes a zero or nominal repayment plan, without more, is not dispositive.

**B. Debtors' plan is proposed in good faith.**

Here, debtors have proposed a plan in which they will pay all of their disposable income to secured creditors over the life of the plan, leaving only a speculative dividend to be paid to unsecured creditors. There is no indication that they have accelerated their repayment of the secured debt to defeat the rights of unsecured creditors, or that they have otherwise acted inequitably. SVB argues that debtors' decision to surrender collateral to certain secured creditors limited their disposable income and therefore evidences a lack of good faith. There is no evidence to support SVB's contention that the surrendered collateral produced sufficient income to service the debt and the costs related to the collateral and leave net income which could be distributed to creditors. It would be in the debtors' best interest to retain all assets which produced net income. I cannot find from the record before me that the debtors are acting contrary to their own economic interests in proposing their plan. I have considered all of the circumstances of the case and the totality of the plan, and find that it is proposed in good faith. Accordingly, SVB's objection to the Third Amended Plan is overruled.

This Memorandum Opinion shall constitute findings and conclusions as required by Fed.R.Civ.P. 52 and Bankr.R. 7052. They shall not be separately stated.