**In re Jerold Willis WILLINGHAM, Debtor.**

**Bankruptcy No. BK 87–40393.**

United States Bankruptcy Court, S.D. Illinois.

March 17, 1988.

Matt Beal, Mt. Vernon, Ill., for plaintiff.

Merritt S. Deitz, Jr., Sebree, Ky., for debtor/defendant.

MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

This matter is before the Court on an objection by Federal Land Bank ("FLB") to debtor's proposed Chapter 12 Plan of Reorganization. FLB, as an unsecured creditor, objects that the proposed plan fails to comply with 11 U.S.C. § 1225(a)(4) in that FLB would receive less under the plan than it would receive if debtor were liquidated pursuant to Chapter 7 of the Bankruptcy Code.

Section 1225(a)(4), relating to confirmation of a Chapter 12 plan, states:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

Section 1225(a)(4), known as the "best interests of creditors" test, requires that unsecured creditors receive at least as much under a Chapter 12 plan as they would receive in a Chapter 7 liquidation.

In objecting to the proposed plan, FLB asserts, based on "information and belief," that debtor is currently in possession of grain proceeds from the 1987 harvest.

FLB alleges that these proceeds constitute an unencumbered asset of debtor and that, if debtor were liquidated under Chapter 7 on the date set for hearing on the Chapter 12 plan, the grain proceeds would be an asset available for distribution to all unsecured creditors. Since there is no provision in debtor's plan for repayment of the value of debtor's 1987 crop, FLB asserts that it would receive more as an unsecured creditor under a Chapter 7 liquidation than under debtor's Chapter 12 plan and that the plan, therefore, is not in compliance with § 1225(a)(4) and cannot be confirmed.

While debtor does not dispute that the proposed plan fails to provide for payments to unsecured creditors equal to the value of unencumbered grain proceeds in his possession, debtor maintains that the plan may nevertheless be confirmed because it complies with the requirement of 11 U.S.C. § 1225(b)(1)(B) that all of debtor's disposable income be applied to make payments under the plan. Section 1225(b)(1)(B) provides in pertinent part:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
> (B) the plan provides that all of the debtor's projected disposable income to be received in the [period of the plan] ... will be applied to make payments under the plan.

It is debtor's position that § 1225(b)(1)(B) provides an alternative to literal compliance with the requirement of § 1225(a)(4) and that a plan of reorganization under Chapter 12 may be confirmed despite objection by an unsecured creditor so long as the disposable income requirement of § 1225(b)(1)(B) is met.

The requirements for confirmation of a Chapter 12 plan set forth in § 1225 are substantially the same as those applicable to Chapter 13 plans (*see* 11 U.S. C. § 1325), and analogy may be made to Chapter 13 precedents in interpreting § 1225. *See* 5 *Collier on Bankruptcy,* § 1225.01 (15th ed. 1987); *In re Janssen Charolais Ranch, Inc.,* 73 B.R. 125 (Bankr.

D.Mont.1987). Section 1225(a), like § 1325(a), contains six requirements that must be met before a plan may be confirmed. Unlike the confirmation standards of subsection (a), however, subsection (b) states a requirement that must be met only in the event of an objection by the trustee or an unsecured creditor. *See Id.* § 1325.08[2], at 1325–45. From this distinction, it can be seen that the requirements of subsection (a) are separate from those of subsection (b) and that, rather than providing an alternative to compliance with subsection (a), subsection (b) sets forth an additional requirement for confirmation if objection is made under that subsection. *See In re Fries,* 68 B.R. 676 (Bankr.E.D.Pa.1986).

The legislative history of § 1325(b) likewise indicates that subsection (b) was intended as a separate test to be met in addition to, rather than instead of, the requirements of subsection (a). Subsection (b), contained in the Bankruptcy Amendments and Federal Judgeship Act of 1984, was added to resolve "the ongoing dispute regarding whether there should be a minimum level of payments in chapter 13, other than that set by the section 1325(a)(4) best interests of creditors test[.]" 5 *Collier on Bankruptcy,* § 1325.08[1], at 1325–42; *see Fries,* 68 B.R. at 682. While the "good faith" standard of § 1325(a)(3) had been interpreted by some courts as requiring "substantial" or "meaningful" payments to unsecured creditors despite compliance with the minimum requirement of § 1325(a)(4), the new amendment demonstrated that the "good faith" standard of § 1325(a)(3) did not set any minimum amount or percentage of payments that must be made to unsecured creditors. 5 *Collier on Bankruptcy,* § 1325.08[1], at 1325–43. Rather, the "ability to pay" test of § 1325(b) set forth the definitive measure of required payments to unsecured creditors once the confirmation standards of § 1325(a) had been met. *See id.* at 1325–44 to 45. The "ability to pay" test of subsection (b) was thus intended as an additional protection for holders of unsecured claims (*see id.* § 1325.05, at 1325–18 & n. 1) rather than as an alternative to the require-

ment of the "best interests of creditors" test of subsection (a)(4).

While there is little decisional authority dealing with the correlation between subsections (a)(4) and (b)(1)(B) in the Chapter 12 context, cases dealing with confirmation requirements for Chapter 12 plans support the conclusion that the "best interests of creditors" test of § 1225(a)(4) and the "ability to pay" test of § 1225(b)(1)(B) constitute separate and distinct requirements for confirmation under Chapter 12. The court in *In re Hansen*, 77 B.R. 722 (Bankr.D.N.D. 1987), discussed the § 1225(a)(4) requirement that unsecured creditors receive as much under the proposed plan as they would upon liquidation, noting that the unsecured creditors in question would be paid in full if the debtors were liquidated under Chapter 7. The *Hansen* court concluded that the unsecured claims must be discounted to present value and paid in full in order to comply with § 1225(a)(4) and protect the present value of unsecured creditors' claims. The Court continued:

> Moreover, the chapter 12 trustee will monitor a confirmed plan and ascertain that excess disposable income goes to pay creditors. 77 B.R. at 726.

The court's comments indicate, therefore, that the requirement of § 1225(a)(4) must be satisfied independently and cannot depend on the payment of debtors' disposable income into the plan as required by subsection (b).

Similarly, in *In re O'Farrell*, 74 B.R. 421 (Bankr.N.D.Fla.1987), the court dismissed the objections of an unsecured creditor to the debtors' proposed Chapter 12 plan, stating:

> The debtors propose to submit all disposable income to the plan, and the liquidation analysis presented upon hearing shows a greater return to holders of unsecured claims under the plan than that realizable under a Chapter 7 proceeding.

74 B.R. at 423. From this statement, it can be seen that the court considered the requirement that debtors receive more under the plan than in a Chapter 7 proceeding (§ 1225(a)(4)) and the requirement that debtors submit all disposable income to the plan (§ 1225(b)(1)(B)) to be separate and cumulative prerequisites to confirmation of the proposed plan.

In arguing that the disposable income requirement of § 1225(b)(1)(B) constitutes an alternative to compliance with the "best interests of creditors" test of § 1225(a)(4), debtor relies on the recent decision of *In re Fauth*, 79 B.R. 490 (Bankr.D.Mont.1987). The *Fauth* court, in *dicta*, considered whether liquidation was appropriate upon objection by an unsecured creditor that it would not receive the same value under a proposed Chapter 12 plan as it would receive in a Chapter 7 liquidation. The court opined that to allow liquidation in such circumstances would thwart the clear intent of Congress to keep the family farmer in operation and stated, therefore, that the provisions of subsection (b) constituted an exclusive remedy to an objecting unsecured creditor under § 1225. The *Fauth* court concluded that Congress had met the "best interests of creditors" test

> by opting against liquidation of the farm in favor of continued operation with the attendant committment that all of the disposable income will be used to pay claims. 79 B.R. at 491.

Having considered the language and legislative history of subsections (a)(4) and (b)(1)(B), this court disagrees with the reasoning of *Fauth* that § 1225(b)(1)(B) provides an exclusive remedy to an unsecured creditor objecting under § 1225(a)(4). This Court finds no prior Chapter 13 precedents or any legislative history of Chapter 12 to support the *Fauth* court's analysis and concludes, therefore, that the *Fauth* decision represents a misreading of § 1225.

■ Because this Court has found that §§ 1225(a)(4) and (b)(1)(B) constitute separate and distinct requirements that must be satisfied independently, debtor's plan cannot be confirmed so long as it fails to comply with the "best interests of creditors" test of § 1225(a)(4). For this reason, debtor's proposed plan is not capable of confirmation and FLB's objection to confirmation of debtor's plan must be sustained.

IT IS ORDERED that the objection of FLB to confirmation of debtor's proposed Chapter 12 plan is SUSTAINED.