In the Matter of Frank Charles SCHWARZ, Barbara Lucille Schwarz, Engaged in Farming, Debtors.

Bankruptcy No. 87–1115–C.

United States Bankruptcy Court, S.D. Iowa.

April 11, 1988.

Anita L. Schodeen, Des Moines, Iowa, for debtors.

F.L. Burnette, II, Des Moines, Iowa, for Metropolitan.

Carol F. Dunbar, Waterloo, Iowa, Trustee.

## ORDER ON OBJECTION TO PLAN

LEE M. JACKWIG, Chief Judge.

At the preliminary hearing on confirmation of plan, held in Des Moines, Iowa, Metropolitan Life Insurance Company (Metropolitan) disputed the debtors' treatment of disposable income. Anita L. Shodeen, appeared on behalf of the debtors and F.L. Burnette, II, appeared on behalf of Metropolitan.

## FACTUAL BACKGROUND

The debtors sought protection under Chapter 12 on April 24, 1987. Their plan treats $100,190.00 of Metropolitan's $203,-000.00 claim as a secured claim and the remainder as an unsecured claim. Metropolitan is the only unsecured creditor. The debtors propose to settle the unsecured claim by payment of $500.00 upon the effective date of the plan. The plan contains no provision committing projected disposable income over the stated term of the plan, which is one year. The debtors' cash flows show that income exceeds expenses and

debt service in the amount of $13,636.36 in 1987 and $8,657.52 in 1988.

## DISCUSSION

### I.

Metropolitan first asserts that 12 U.S.C. section 1225(b) requires that disposable income be contributed over a three-year period. The debtors maintain that Chapter 12 does not contain such a requirement. .

Section 1225(b)(1) provides in part:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

. . . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period, or such longer period as the court may approve under section 1222(c), beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

In the case of *In re Wobig*, 73 B.R. 292 (Bankr.D.Neb.1987), Judge Timothy Mahoney found that section 1225(b)(1)(B) mandated that a Chapter 12 plan remain open for three years and that all of the debtors' projected disposable income received during that period be applied to the plan. This holding squares with the plain meaning of the provision. The legislative history is of little specific assistance in that it contains only a brief discussion that essentially reiterates the language of section 1225(b)(1)(B). H.Conf.R. No. 958, 95th Cong., 2nd Sess. 50, *reprinted in* 1986 U.S.CODE CONG. & ADMIN.NEWS 5227, 5251.

The debtors cite Chapter 13 cases that hold that a three year plan is not mandatory. See, e.g., *In re Markman*, 5 B.R. 196 (Bankr.E.D.N.Y.1980). Indeed, the overall legislative history of Chapter 12 reveals that it has been patterned to a large extent after Chapter 13. 132 Cong.Rec. S 15076 (daily ed. Oct. 3, 1986) (statement of Sen. Grassley). The language in section 1225(b)

closely parallels the language in section 1325(b). However, the cases upon which the debtors rely no longer are apposite to the issue at hand because they were rendered prior to the enactment of the disposable income provision of section 1325(b).

The disposable income provision is a product of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984). Generally, the legislative history of the 1984 amendments has been described as "vague and unenlightening." *In re Jones*, 55 B.R. 462, 465 (Bankr.D.Minn.1985). One commentator suggests that the purpose underlying the addition of the provision rested on three propositions:

> (1) the Code was responsible for a dramatic increase in consumer bankruptcies; (2) this increase was in turn responsible for billions of dollars of losses in discharged debt every year, losses which are ultimately borne by the public at large in the form of higher interest rates, higher prices for goods and services, and denial of access to credit markets and (3) a substantial number of debtors resorting to bankruptcy were capable of paying off their debts out of future income and hence did not need or deserve the radical relief that bankruptcy affords.

Breitowitz, *New Developments in Consumer Bankruptcies: Chapter 7 Dismissal on the Basis of "Substantial Abuse"*, 59 Am.Bankr.L.J. 327, 336–37 (1985).

The cases cited by the debtors involved the construction of section 1322(c)[1] and whether that provision required payments over a period of three years. Chapter 13 cases decided after passage of the disposable income provision hold that debtors must submit all disposable income to be received during the three years for payments under the plan. *See, In re Festa*, 65 B.R. 85, 86 (Bankr.S.D.N.Y.1986); *In re Kitson*, 65 B.R. 615, 618 (Bankr.E.D.N.C.1986); and *In re Greer* 60 B.R. 547, 552 (Bankr.C.D. Cal.1986). Given that the cases cited by the debtors did not address section 1325(b), those decisions are not controlling.

Based on the foregoing discussion, the court finds that section 1225(b) requires the debtors to commit disposable income to make plan payments for the three-year period.

### II.

■ Metropolitan next contends that all income that exceeds operating expenses and debt service for a particular crop year must be devoted to plan payments. Metropolitan argues that to permit the debtors to retain any "cushion" for future operating costs would in effect be coercing it to bear the principal and interest costs of the debtors' operation.

11 U.S.C. § 1225(b)(2) defines "disposable income" as follows:

> (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor; or
>
> (B) for the payment of expenditures necessary for the continuation, preservation, and operation of the debtor's business.

Metropolitan's argument is based upon the debtors' cash flows which show that the debtors plan to generate income in excess of expenses and debt service. The court will not make final disposable income determinations strictly on the basis of cash flow projections. Although section 1225(b)(1)(B) speaks of *"projected"* disposable income being applied to plan, literal construction and application of section 1225(b)(1)(B) would ignore the reality of farm reorganizations. That is, cash flow projections rarely predict with any degree of precision the income an operation will generate and the expenses it will incur. The weather, government policies and fluctuating markets make forecasting bottom lines difficult at best.

---

**1.** 11 U.S.C. section 1322(c) provides:
The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

Except insofar as a debtors' plan must pay the unsecured creditors at least as much as they would receive upon liquidation,[2] the court has not required that the debtors designate a specific sum for unsecured claims. Rather, as discussed in the preceding division of this opinion, the debtors' plan must commit disposable income to plan payments for a period of three years. At the end of each year, the trustee will review the monthly disclosure statements that have been filed with her and recommend a specific amount to the debtor for distribution to the unsecured creditor. In the event Metropolitan would dispute the dollar figure upon which the trustee and debtor agree, it could challenge the distribution as an unsecured claimholder under 11 U.S.C. section 1229(a)(1).

## CONCLUSION AND ORDER

WHEREFORE, based upon the foregoing discussion, the debtors' failure to commit disposable income to plan payments for a period of three years violates 11 U.S.C. section 1225(b)(1)(B).

THEREFORE, Metropolitan's objection to the plan is sustained. The debtors are given 20 days to submit an amended plan that comports with this order.

---

2. See *Matter of Herr,* 80 B.R. 135, 136 n. 1 (Bankr.S.D.Iowa 1987) ("Had best interest of creditors test found at 11 U.S.C. section 1225(a)(4) required the debtors to make disbursements to unsecured creditors and had the debtors proposed to make the disbursements over time, interest would have been required.").