**In re Robert Lee FLESHMAN, and Carol Fleshman, Debtors.**

**Bankruptcy No. 87–01684–SJ–12.**

United States Bankruptcy Court, W.D. Missouri.

Dec. 4, 1990.

David C. Stover, Gunn, Jones, Shank & Harman, Gladstone, Mo., for Farm Credit Bank.

Stephen B. Strayer, Liberty, Mo., for debtors.

## ORDER DENYING DEBTORS' MOTION TO AMEND ORDER DIRECTING PAYMENT OF DISPOSABLE INCOME AND DENYING FARM CREDIT BANK'S MOTION TO AMEND PLAN

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The matter before the Court is the motion seeking amendment of this Court's order directing payment of disposable income, filed by debtors on October 29, 1990, and the related motion to amend the debtors' Chapter 12 plan, filed by Farm Credit Bank on November 9, 1990. The Court previously found that the debtors have accumulated disposable income. Debtors now ask the Court to find that the Plan does not require payment of such disposable income to unsecured creditors, but that debtors should instead be allowed to use such disposable income to prepay their future obligations to secured creditors. In response, Farm Credit seeks to have the Plan amended to clarify that disposable income must be paid to unsecured creditors, and to appoint a Chapter 12 Trustee to receive and distribute such income. The Court finds that the existing Plan must be interpreted to require payment of disposable income to unsecured creditors, that a Chapter 12 Trustee was included in the debtor's original plan, and that disposable income must therefore be paid to the Chapter 12 Trustee for distribution to unsecured creditors. As a result, the amendment proposed by Farm Credit is unnecessary. Therefore, both motions will be denied. The Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334(b), and may enter final orders pursuant to 28 U.S.C. § 157(b)(2).

Debtors filed their Chapter 12 case on April 17, 1987, their schedules on June 17, 1987, and their original Chapter 12 plan on July 15, 1987. After receipt of several objections to the plan, including the objection of the Farm Credit Bank ("FCB"), the late Judge Dennis Stewart submitted this case to arbitration, pursuant to the process then in place for handling of Chapter 12 cases. Following the arbitration process, Judge Stewart conditionally confirmed debtors' Chapter 12 plan on October 12, 1987, which resulted in several more objections to the plan, including one raised by FCB. Judge Stewart held a hearing on confirmation of debtor's Chapter 12 plan, as amended, on November 30, 1987, after which the plan, as amended, was conditionally confirmed on December 15, 1987.

Section 1225 of the Bankruptcy Code (11 U.S.C. § 1225) sets out various requirements for confirmation of a Chapter 12 Plan. Two of these requirements specifically protect unsecured creditors. Section 1225(a)(4), known as the "best interest of creditors" test, requires that in all cases each unsecured claim receive under the Plan not less than it would receive in a Chapter 12 liquidation. Section 1225(a)(4) reads as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. Section 1225(a)(4)

Section 1225(b)(1) contains the "disposable income" test. This requirement is only applicable in cases where the trustee or an unsecured creditor objects to confirmation. This section reads as follows:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three year period, or such longer period as the court may approve under section 1222(c), beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1225(b)(1).

■ The leading bankruptcy treatise interprets such provision as follows:

Section 1225(b)(1) sets forth an additional confirmation requirement that must be met only if the trustee or the holder of an unsecured claim objects to confirmation of the plan. If an objection is raised, the court cannot confirm the plan unless the court finds that either the plan provides for full payment of the allowed amount of each unsecured claim or the plan provides that the debtor must contribute all of the debtor's net disposable income during the plan period towards payment of unsecured claims.

5 *Collier on Bankruptcy* ¶ 1225.04 (15th Ed.).

Courts have interpreted § 1225(b)(1) to require that the plan commit all disposable income to unsecured creditors, and to further require that disposable income be computed after the fact, based on actual income and expenses incurred, rather than asking the debtor at the beginning of the plan to project the income it hopes to receive. *Matter of Schwarz*, 85 B.R. 829 (Bkrtcy.S.D.Iowa 1988).

The debtor's plan, as confirmed by Judge Stewart, contains two provisions concerning unsecured claims, each of which is directed toward one of the two confirmation requirements.

Section III, Paragraph 12 provides as follows:

All allowed claims shall receive, upon confirmation of the plan, that amount that would be paid on said claim if the estate of the debtor's was liquidated under Chapter 7 of the Bankruptcy Code on the date of confirmation.

This requirement is consistent with Section 1225(a)(4), the "best interests of creditors" test.

As to disposable income, the plan provides as follows in Section IV:

All the debtors (sic) projected disposable income to be received in the three-year period beginning on the date the first payment is due under the plan, will be applied to make payments under the plan.

This provision is consistent with Section 1225(b)(1) and is required where, as here, an unsecured creditor objects to a plan calling for less than full payment.

Section 1225(b)(2) defines disposable income for these purposes. It reads as follows:

(2) For the purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; or

(B) for the payment of expenditures necessary for the continuation, preservation, and operation of the debtor's business.

11 U.S.C. § 1225(b)(2).

On June 1, 1989, Judge Stewart entered his order directing debtors to show cause why disposable income of $8,567 accumulated during 1987 should not be distributed to unsecured creditors. Upon a showing that debtors needed the funds to make plan payments for the Fall of 1989, Judge Koger entered his order setting aside the show cause order on June 28, 1989.

On May 9, 1990, FCB filed its motion to compel payment of disposable income. On June 5, 1990, pursuant to Federal Bankruptcy Rule 7012, debtors responded to FCB's motion by requesting a dismissal of all or part of FCB's motion. This motion was granted by the Court only with respect to calendar year 1987, which had been the

subject of the prior orders. A hearing was held on FCB's motion on October 2, 1990, at which time counsel for debtors, FCB and the Farmers Home Administration appeared, and evidence was presented.

The evidence showed that debtors do not operate a substantial farming operation, but rent a portion of their farm land to others, and have enrolled another portion in the federal government's CRP program. This rental and CRP income form the primary basis for payments under debtor's Chapter 12 Plan. Therefore, debtors do not incur the expenses for seed, fertilizer, and other inputs which would be incurred if they actually farmed the land. Debtors do not live on their farm, but rather rent the house and the farm to someone else and live in Liberty, Missouri.

The evidence further showed that the Monthly Operating Reports submitted to the Bankruptcy Court, which would ordinarily be used to compute disposable income, had failed to disclose certain income received by the debtors in 1988 and 1989. This included interest of $2,975.00 on bank Certificates of Deposit, as well as wages of $2,532.00, both of which were included in tax returns filed by the debtor for those years. Also, the evidence showed that at the time their plan was confirmed, the debtors projected annual household expenses of $25,000. However, in 1988 their actual living expenses were $48,115.00, and in 1989 such expenses were $38,614; thus, in those two years the debtors spent $36,729 more for living expenses than had been projected at the time their plan was confirmed. Since the confirmation of their Chapter 12 Plan, debtors have purchased a new car for $9,500 cash. They did not attempt to obtain bank financing for such purchase. They also have built a cabin on their farm at a cost in excess of $10,000. The debtors will continue to benefit from such a cabin long after their current debts have been discharged. In 1988 and 1989 debtors also donated a total of $9,500 to charity. At the time of the hearing, the debtors had cash in the bank in excess of $62,000. The government payments they will receive by the end of 1990 are roughly equal to the payments

they will be required to make to secured creditors this year.

■ In evaluating the evidence, the Court recognized that the calculation of disposable income includes a subjective analysis of what expenses are "reasonably necessary" for the maintenance or support of a debtor and his family or the continuation, preservation, and operation of his business. *In re Kuhlman*, 118 B.R. 731 (Bkrtcy.D.S.D.1990). In *In re Coffman*, 90 B.R. 878, 886 (Bkrtcy.W.D.Tenn.1988), the Court stated as follows with respect to calculating disposable income:

> Overall, this must be an inquiry ... into what is commercially reasonable under all the facts and circumstances. The debtor must not be permitted to evade the payment of disposable income by improper expenditures. [T]his is not a simple cash flow inquiry. [Cite omitted.] The Court is mindful that the debtors should not accumulate an unreasonably large reserve of funds which could be a windfall at the time of discharge. Neither should the debtors be unreasonably hindered from reaching their reorganizational goals.

In determining disposable income, Courts should consider that a "fundamental purpose of the disposable income provisions is to prevent large expenditures by debtors for non-essential items which ultimately reduce the sum available to pay holders of unsecured claims." *In re Hedges*, 68 B.R. 18, 20 (Bkrtcy.E.D.Va.1986), 5 *Collier on Bankruptcy* ¶ 1325.08 (15th Ed.1985).

The Court concluded that debtors had disposable income as defined in 11 U.S.C. § 1225(b)(2), and that the debtors were required to pay the amount of $38,545.00 to their unsecured creditors. This amount was reached by adding together the unreported income ($5,507), excess charitable contributions of $7,000 (*See, In re Reynolds*, 83 B.R. 684 (Bkrtcy.W.D.Mo.1988)), the cost of cabin construction, the new vehicle, and a tiller purchased for the family garden (a total of $20,538), as well as

$5,000 which was transferred to Mr. Fleshman's father without court approval.[1]

■ On October 29, 1990, debtors filed a motion to amend the order directing payment of disposable income. Debtors do not seek amendment of the Court's findings and conclusions with respect to the determination that disposable income existed. Rather, debtors only seek to choose which group of creditors receive the disposable income, preferring secured creditors to unsecured creditors. FCB replied by filing its suggestions in opposition and motion to amend the plan on November 9, 1990.

Debtors have not designated the procedural provision under which they seek amendment of the Court's order. Accordingly, the Court shall treat it as a motion under Federal Bankruptcy Rules 9023, 9014 and 7052, incorporating by reference Federal Rules of Civil Procedure 52 and 59. *Sanders v. Clemco*, 862 F.2d 161 (8th Cir. 1988).

The issue presented by debtors' and FCB's motions is whether debtors' surplus disposable income, which is not necessary for the satisfaction of secured claims, should be used to pay unsecured creditors, who have received no payments, or to prepay the claims of secured creditors, who have received all payments required by debtors' plan. This is not a case where all of a debtor's disposable income is necessary to satisfy secured claims pursuant to 11 U.S.C. § 1225(a)(5). Debtors' present position, which was not raised at the hearing on this matter, is that the Court's October 18, 1990 order should be amended to allow the debtors to pay all of their disposable income to secured creditors. Debtors suggest that this is the only permissible payment method under their plan, when it is read with the applicable provisions of Chapter 12. Debtors argue that Section 1225(b)(1)(B) does not require payment of disposable income to unsecured creditors, but that it only requires payment under the plan. Therefore, debtors submit that since their plan eliminated all payments to unsecured creditors, the only allowable recipients of this disposable income are secured creditors.

The filing of a Chapter 12 petition and confirmation of a Chapter 12 plan confers benefits and imposes burdens upon debtors while at the same time providing some degree of protection and compensation for creditors. The Chapter 12 debtor benefits from retaining ownership and possession of his family farm and other property, despite the existence of loan defaults and foreclosure remedies available to creditors. The Chapter 12 debtor also benefits from the discharge of indebtedness that is granted for the completion of payments as provided for under his plan. 11 U.S.C. § 1228. In exchange for these substantial benefits, the debtor is required to pay creditors according to the requirements imposed by Chapter 12. With respect to secured creditors, as discussed above, the Chapter 12 debtor must pay, over time, the underlying value of the creditor's collateral plus interest. 11 U.S.C. § 1225(a)(5). With respect to unsecured creditors, the debtor must pay at least that which would be received in a Chapter 7 liquidation, pursuant to 11 U.S.C. § 1225(a)(4), and if an unsecured creditor objects to confirmation of the plan, it can only be confirmed if the debtor either pays the unsecured creditor's entire claim or devotes the balance of his disposable income to the plan. 11 U.S.C. § 1225(b)(1)(A) and (B). In this manner, creditors of the Chapter 12 family farmer receive payments in the same manner as had bankruptcy not intervened: the secured creditor receives the value of his collateral, and the unse-

---

1. A number of other different methods were also considered, all of which showed substantial disposable income. For example, the evidence offered by Farm Credit Bank, based upon the Monthly Operating Reports and tax returns, showed 1989 net proceeds of $56,683, after payment of all living and operating expenses, and after making of Plan payments to secured creditors. Such evidence also showed 1988 net proceeds of $2,817. These results were achieved despite giving debtors credit for all living expenses incurred, even though such living expenses were substantially beyond the projected $25,000 per year. Other evidence offered by Farm Credit showed net proceeds for the years 1987 through 1989 of $132,325, from which should be subtracted an inheritance received by Mrs. Fleshman in the amount of $45,234 which does not qualify as disposable income, leaving a total of $87,091 for those three years.

cured creditor receives his pro rata share of unencumbered assets, including earned income that could have been garnished.

Debtors' position is that the Plan as confirmed does not require them to pay any disposable income to unsecured creditors, even if such disposable income is generated during the course of the Plan. But the Plan would not have been confirmable, over the objection of an unsecured creditor, if it had contained such a provision. *In re Rott*, 94 B.R. 163, 166 (Bkrtcy.D.N.D.1988); *In re Janssen*, 73 B.R. 125, 128 (Bkrtcy.D. Mont.1987); *In re Citrowske*, 72 B.R. 613, 616 (Bkrtcy.D.Minn.1987).

Debtor by its motion therefore attempts to interpret the plan in a way which would have made it nonconfirmable when proposed. This the Court cannot do. From my review of the record it is obvious that Judge Stewart interpreted the Plan to require that disposable income go to unsecured creditors. This is particularly so in light of his Order of June 1, 1989 directing debtors to show cause why they should not be required to pay disposable income to unsecured and undersecured creditors. Debtors responded to such Order by showing that no disposable income existed, since all monies held were needed to make plan payments to secured creditors, and to pay normal operational and household expenses. In setting aside the show cause order, Judge Koger did not find that any disposable income would not be payable to unsecured creditors—he simply found that there was no disposable income. Indeed, as shown, the Plan must be interpreted to require that disposable income go to unsecured creditors. Otherwise, it could not have been confirmed.

Debtors' reliance upon the case of *In re Kjerulf*, 82 B.R. 123 (Bkrtcy.Ore.1987), is misplaced. *Kjerulf* involved a creditor's bad faith challenge to the initial confirmation of the Chapter 12 plan where all disposable income was necessary for the payments to secured creditors and no payments were being proposed to unsecured creditors. The present case is distinguishable, however, since debtors are current in their payments to secured creditors and now seek to prepay secured creditors, rather than unsecured creditors, with surplus disposable income.

In summary, debtors seek the benefit of protecting their postpetition income, the same way that a Chapter 7 debtor may protect postpetition income from the claims of unsecured creditors, while at the same time enjoying the possession of their property as provided in Chapter 12. Unfortunately for the debtors, there is no "Chapter 19" relief available and they cannot have it both ways. Since the debtors have chosen to proceed under Chapter 12, they must pay excess disposable income to unsecured creditors.

Debtors' plan, filed on July 15, 1987, provides that debtors shall submit to the Chapter 12 Trustee all such income as is necessary for the execution of the plan. It does not appear that this term was ever removed from the plan when it was amended in 1987. Thus, there is no need for the debtors' Chapter 12 plan to be amended to allow for the appointment of a Chapter 12 Trustee. Prior to this Order, Richard Fink, the Chapter 12 Trustee, has not participated in this case due to the debtors' contention that they had no disposable income. Since the Court concludes that disposable income does exist, it is now time for Mr. Fink to participate in these proceedings. Accordingly, pursuant to the terms of the plan, the debtors are directed to pay over the amount of $38,545.00 to the Chapter 12 Trustee, within 30 days, for distribution to unsecured creditors.

IT IS SO ORDERED.