**In re Leonard Alfred ROWLEY and Beverly Ann Rowley, Debtors.**

**Rick A. YARNALL, Trustee, Plaintiff,**

v.

**Leonard Alfred ROWLEY and Beverly Ann Rowley, PCA and FmHA, Defendants.**

**FmHA, Plaintiff,**

v.

**Leonard Alfred ROWLEY and Beverly Ann Rowley, Defendants.**

Bankruptcy No. 87–40157–PKE.
Adv. No. 91–4042–PKE.

United States Bankruptcy Court, D. South Dakota, S.D.

July 30, 1992.

Rick A. Yarnall, Sioux Falls, S.D., trustee.

J. Bruce Blake, Blake Law Offices, Sioux Falls, S.D., for Leonard Alfred Rowely and Beverly Ann Rowley.

Michael E. Ridgway, Yankton, S.D., for defendant PCA.

Craig Peyton Gaumer, Asst. U.S. Atty., Sioux Falls, S.D., for defendant/plaintiff FmHA.

PEDER K. ECKER, Bankruptcy Judge.

The matter before the Court is a Complaint to Determine Debtors['] Obligation to Pay Net Disposable Income Pursuant to 11 U.S.C. § 1225(b). Since 1987, Debtors have made payments according to a confirmed Chapter 12 plan of reorganization and are currently seeking a discharge based upon the allegation that all plan payments have been made. The complaint states that 11 U.S.C. § 1225(b) was properly triggered to require the payment of net disposable income and as a result, there is an obligation to do so even though the plan failed to offer such payments.

The plan, provisionally confirmed, stated that if the holder of any unsecured claim objected to confirmation, then all "projected" disposable income would be applied to make payments under the plan. Plan objections were filed, but since the plan "projected" a zero dividend/distribution to the members of the unsecured class of creditors, Debtors contend no obligation exists to pay "net" disposable income.

The Chapter 12 Trustee filed a complaint seeking the Court's determination that Debtors are obligated to pay disposable income, notwithstanding the language of the plan which omits any reference to "net" disposable income. A trial commenced October 10, 1991, and was continued to May 1, 1992, at which time the Court took the matter under advisement. The primary issue is whether a Chapter 12 debtor has an obligation to pay net disposable income under a Chapter 12 plan confirmed pursuant to 11 U.S.C. § 1225(b) when the debtor provides that all projected disposable income received during the plan period will be applied to make payments under the plan, but when a zero dividend or distribution is projected. The Court issues this ruling which shall constitute Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1).

## FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed a joint Chapter 12 petition for relief on March 16, 1987. Shortly thereafter, the Production Credit Association of the Midlands [hereinafter "PCAM"] and the Farmers Home Administration [hereinafter "FmHA"] filed proofs of claims in the estate.[1] A Chapter 12 plan of reorganization was filed July 9, 1987, and several objections to confirmation were filed thereafter.

The first objection, filed by PCAM on August 7, 1987, stated that PCAM was a secured creditor in the bankruptcy proceeding, but did not indicate that it also held an unsecured position or that the objection involved its unsecured claim. Multiple grounds for objecting to plan confirmation were enumerated, however, including lack of good faith and failure to comply with the requirements of 11 U.S.C. § 1225(a). On August 13, 1987, the United States Trustee filed four specific objections to plan confirmation, one of which stated that since the plan did not propose to pay 100% of allowed

---

1. The PCAM filed two proofs of claims on April 20, 1987: one for $188,351.32 and one for $171,- 191.51. FmHA filed its proof of claim in the amount of $127,936.42 on April 28, 1987.

unsecured claims, the plan must "contain a commitment by the debtor to apply all of debtor's projected disposable income during the life of the Plan to the payments under the Plan." The FmHA filed an objection on August 20, 1987, concerning the valuation of real property used to secure its claim, along with a motion for a valuation hearing pursuant to 11 U.S.C. § 506.[2] At the August 27, 1987, confirmation hearing, the Chapter 12 Trustee reported to the Court that except for FmHA's objection concerning valuation, all other objections had been resolved and plan confirmation was recommended. The plan was provisionally approved by the Court on September 17, 1987.[3]

Debtors filed a motion to modify the confirmed plan on November 23, 1988, and a Restated Plan as Confirmed on April 25, 1989. The Restated Chapter 12 Plan did not alter the plan treatment rights of the unsecured and undersecured creditors. According to the plan, both PCAM and FmHA were identified as holders of unsecured claims and were treated as such. Under Article V., paragraph B., entitled, "Unsecured Claims," the original plan stated:

1. *Class 9—The UNSECURED CLAIMS OF THE GENERAL CREDITORS*

    This class shall consist of the holders of:

    (a) allowed, unsecured claims; and

    (b) that portion of any claim scheduled as secured which has been determined to be unsecured by the court or by stipulation or if so asserted by

the debtor for the purposes of this plan, namely:

| | |
|---|---|
| FmHA: | $127,900.00 |
| FLB: | $ 26,300.00 |
| PCA: | $216,000.00 |

Article VIII, "Treatment of Claims," stated:

B. UNSECURED CLAIMS

1. *CLASS 9—The Unsecured Claims of the GENERAL CREDITORS*

    (a) No dividend or distribution of any kind is *projected* for the members of this class. (Emphasis added.)

    (b) If the Chapter 12 trustee or the holder of any allowed unsecured claim objects to confirmation of the plan, then, as of the effective date of the plan:

        (1) all of the debtors' *projected* disposable income to be received in the subsequent three year period, beginning on the effective date of the plan, will be applied to make payments under the plan. (Emphasis added.)

On January 28, 1991, Debtors filed a Motion for Discharge pursuant to 11 U.S.C. § 1228(a). Objections to discharge were filed by FmHA,[4] PCAM, and the Chapter 12 Trustee. The objections, similar in nature, focused on Debtors' failure to allege or show that all payments had been made under the plan and Debtors' failure to demonstrate the nonexistence of disposable income during the life of the plan which might have been paid to the undersecured and unsecured creditors. The parties

---

**2.** On October 15, 1991, after the complaint was filed, the FmHA filed an Amended Objection to Confirmation, stating that the provisional order of confirmation never resolved the question of disposable income as it concerned unsecured and undersecured creditors nor was a final order of confirmation entered to time bar or moot out amendments to plan objections. The crux of the amended objection is that Debtors failed to provide an income and distribution analysis to support a zero dividend/distribution projection and this lack of data created mere conjecture upon which to base their plan treatment regarding disposable income payments.

**3.** The Court provisionally confirmed the Chapter 12 plan, "contemplating that when the par-

ties agree or the Court determines the valuation matters and the objections of the Farm Home Administration that the results of those matters will be interjected into the debtors' plan." (Confirmation Hr'g Tr. at 13 ¶ 10.)

**4.** The objection alleges that Debtors' annual reports to the Chapter 12 Trustee reveal net income following payment of expenses for calendar years 1988 and 1989 and further warns that a Chapter 12 discharge is only available if a debtor has paid all available net disposable income to creditors of unsecured and undersecured claims or if a determination is made that there is no net disposable income from the estate.

agreed to continue the discharge hearing on ten days' notice.

On May 22, 1991, Debtors were examined pursuant to Bankruptcy Rule 2004 and proclaimed that the plan made no obligation to pay net disposable income. In response, the Chapter 12 Trustee filed the complaint requesting the Court's determination regarding the issue. The complaint named Debtors, FmHA, and PCAM as party defendants.

Debtors filed an answer September 17, 1991, acknowledging that PCAM and FmHA are holders of unsecured claims but denying that either party filed an objection to the plan as an unsecured claimant. On September 18, 1991, the FmHA filed its answer to the complaint stating no cause of action exists against FmHA for which relief can be granted since FmHA has no obligation to Plaintiff Chapter 12 Trustee. On September 23, 1991, PCAM filed its answer essentially supporting the complaint's prayer for relief.

FmHA filed a Cross–Complaint on behalf of all members of "Class VIII" pursuant to Bankruptcy Rules 7001 and 7013 seeking a judgment declaring Debtors liable to unsecured and undersecured creditors for the payment of net disposable income. FmHA filed a brief and supplemental brief in support of its cross-complaint. In response, Debtors filed an answer stating that because the plan did not offer payments of "net" disposable income and because FmHA's objection did not concern the unsecured portion of its claim, no claimant within the unsecured class is entitled to "net" disposable income.

During the trial on October 10, 1991, evidence was introduced, arguments were presented, and Debtors' counsel made an oral motion to dismiss the complaint. The trial was continued to May 1, 1992, and the Court took the matter under advisement. At the conclusion of the trial, opposing positions had been argued and several issues raised.

The first position, shared by the Chapter 12 Trustee, FmHA, and PCAM, is that Debtors are obligated to pay disposable income as defined by 11 U.S.C. § 1225(b)(2).

The rationale for this conclusion is that pursuant to 11 U.S.C. § 1225(b)(1)(B), unsecured claimants FmHA and PCAM filed objections to the plan, thus triggering the disposable income requirement. FmHA argued that even though its objection concerned the secured portion of its claim, it was an objection sufficient to trigger the statute, making the nature of the objection irrelevant. The end result is that the entire class of creditors must receive a share of disposable income. PCAM argued that even though an objection may be settled before confirmation, once Section 1225(b) is triggered, the benefits of disposable income payments inure to all unsecured creditors, notwithstanding the resolution achieved through settlement. PCAM reasons that since it objected to the plan, the disposable income requirement remained in effect despite resolution reached by the parties prior to confirmation. These parties also share the beliefs that disposable income is an issue for discharge, not confirmation, since projections at confirmation are too speculative, and that Debtors have the burden of proof to show all payments have been made under the plan before discharge will be granted.

The second position is held by Debtors, who deny an obligation to pay net disposable income. Debtors contend that since no creditor objected to the proposed plan's confirmation as the holder of an unsecured claim, 11 U.S.C. § 1225(b) was never triggered. They further support their position with the plan's language which only refers to "projected" income, not "net" income—and a commitment to pay projected income based on a zero projection is not an obligation to pay "net" income. Debtors also assert that disposable income is a confirmation issue, not a discharge issue, rendering all attempts to raise the issue at discharge no more than disguised efforts to modify an already completed plan. Debtors maintain the only possible way to trigger the disposable income requirement through plan objection is to specifically state that the proposed plan does not apply all disposable income toward payments to be made under the plan. Last, Debtors believe ex-

isting case law is inapplicable in this case due to the significant and unique aspect of this plan—this plan does not commit payments of "net" disposable income.

## ISSUES

Several unique disposable income questions are clustered together in this case. The primary issue is whether an obligation exists to pay net disposable income when a plan is confirmed over the objection of the holder of an allowed unsecured claim by providing that all of the debtor's "projected" disposable income to be received during the plan period will be applied to make payments under the plan, but when the debtor projects no disposable income. A second related question is whether Congress intended to allow a Chapter 12 debtor to avoid paying disposable income, as defined and triggered by the Bankruptcy Code, when a debtor's plan projects a zero dividend or distribution due to unanticipated disposable income. A third issue is whether a debtor's stated projections of disposable income are confirmation issues exclusively, so as to give rise to a total and complete defense of estoppel by laches when any objection to discharge is made relative to payment of "net" disposable income. A fourth issue is whether an unsecured creditor must specifically object to a plan's proposal concerning disposable income payments when seeking the protection of 11 U.S.C. § 1225(b)(1)(B).

## APPLICABLE LAW

### A. Confirmation Requirements of 11 U.S.C. § 1225

Chapter 12, Subchapter II of the Bankruptcy Code is entitled, "The Plan," and is organized logically to follow the sequential progression of all developmental stages of a Chapter 12 plan. The initial provisions of Subchapter II discuss preconfirmation topics of plan filing, plan contents, and plan modification under Chapter 12. 11 U.S.C. §§ 1221–1223. Section 1224 requires the court to hold a confirmation hearing of the plan.[5] 11 U.S.C. § 1224. Section 1225 identifies the specific requirements necessary for plan confirmation and the remaining sections address post-confirmation issues.[6] The Bankruptcy Code arranged confirmation provisions, including the disposable income requirement, at the very heart of Subchapter II since confirmation is at the center of a Chapter 12 plan's development.

The confirmation requirements of Section 1225 are divided into two subsections. The first subsection, 1225(a), specifies six Chapter 12 plan requirements.[7] 11 U.S.C. § 1225(a)(1)–(6). If the requirements are met and if no objections have

5. Although this provision states the court "shall" hold a confirmation hearing, the Bankruptcy Code fails to elaborate or give further guidance on what type of hearing is needed: "The only legislative comments on the court's obligation to hold a confirmation hearing are contained in a senate report ... [which] contemplated that 'the duration of the hearing depends on the nature of the case and the matters and issues in dispute.'" *Matter of Dues*, 98 B.R. 434 (Bankr. N.D.Ind.1989), *citing* S.Rep. No. 989, 95th Cong., 2d Sess. 124 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5910.

6. For example, Section 1227 discusses the consequences and effects of a confirmed Chapter 12 plan, Section 1228 deals with discharge after all plan payments are completed, and Section 1229 discusses post-confirmation plan modifications. 11 U.S.C. §§ 1227–1229.

7. The six requirements are:
1. The plan must comply with all applicable Bankruptcy Code requirements;

2. All appropriate, required fees must be paid;
3. The plan must be proposed in good faith;
4. The value of property to be distributed for unsecured claims pursuant to the plan must be at least the same amount that would be paid on the claims under a Chapter 7 liquidation;
5. The plan must deal with secured claims in one of three manners:
   (a) either the secured claimant must have accepted the plan; or
   (b) the plan allows the secured claimant to retain a lien, and the value of property to be distributed is no less than the allowed amount of the claim; or (c) the debtor surrenders the property securing the claim;
6. The debtor is able to comply with the plan and make all payments under the plan.
11 U.S.C. § 1225(a); *see also Matter of Dues*, 98 B.R. at 442–43.

been filed by the trustee or the holder of an allowed unsecured claim, the court "shall" confirm the plan and will ignore the second part of Section 1225. The second subsection, 1225(b), creates an added hurdle to confirmation in the event the Chapter 12 trustee or the holder of an allowed unsecured claim objects to the plan. If the proper objection has been filed, then additional requirements must be met before a court may confirm the Chapter 12 plan. The clear consensus is that both subsections of Section 1225 must be satisfied independently; that is, Subsection (b) is not an alternative to meeting the requirements of Subsection (a). *In re Fobian*, 951 F.2d 1149, 1153 (9th Cir.1991), *citing In re Willingham*, 83 B.R. 552, 554 (Bankr.S.D.Ill. 1988); *In re Fleshman*, 123 B.R. 842, 844 (Bankr.W.D.Mo.1990); *In re Kuhlman*, 118 B.R. 731 (Bankr.D.S.D.1990).

Once Subsection (b) is triggered, the plan is not in a posture for confirmation until one of two options are incorporated into the plan:

> (b)(1) [A]s of the effective date of the plan—
>
> > (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> >
> > (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period, or such longer period as the court may approve under section 1222(c), beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1225(b)(1)(A), (B). A Chapter 12 plan may be confirmed despite objection if it provides "for full payment of the allowed amount of each unsecured claim" or, alternatively, if the plan contributes "all of the debtor's net disposable income during the plan period towards payment of unse-

cured claims." 11 U.S.C. § 1225(b)(1); *see also* 5 L. King, *Collier on Bankruptcy* ¶ 1225.04, at 1225–28, –29 (15th ed. 1983).

### B. The Purpose of Section 1225(b)

The Chapter 12 bankruptcy provisions, modeled after Chapter 13,[8] have done away with the problems associated with the absolute priority rule of Chapter 11 which allowed unsecured creditors to vote against the plan and prevent confirmation if the debtor retained an equity interest in the family farm. *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 367 (5th Cir.1987); *In re Coffman*, 90 B.R. 878, 882 (Bank.W.D.Tenn.1988). But in exchange, the provisions empower unsecured creditors with the ability to file an objection to plan confirmation which triggers the disposable income requirement of Section 1225(b) and offers protection by preventing "large expenditures by debtors for non-essential items which ultimately reduce the sum available to pay holders of unsecured claims." *In re Hedges*, 68 B.R. 18, 20 (Bankr.E.D.Va.1985).

> If a Chapter 12 debtor has the ability because of current income generated during the plan to pay the claims of unsecured creditors without jeopardizing his reorganization effort, the debtor should be required to do so. Otherwise, a debtor with little or no realizable equity in its assets could unjustly deprive creditors of the income enjoyed under a successful plan.

*In re Wood*, 122 B.R. 107, 112–13 (Bankr.D.Idaho 1990).

The unsecured creditor's "protection by objection" is not unchecked, however. The unsecured creditor can halt or at least delay confirmation, but an override exists to overcome the objection by fulfilling the disposable income requirement. In effect, both parties are protected by Section 1225(b). Protection is the main purpose of

---

**8.** "The language of section 1225(b) was taken almost verbatim from section 1325(b) which applies to chapter 13 cases. Section 1325(b) was added to chapter 13 by the Bankruptcy Amendments and Federal Judgeship Act of 1984 in order to resolve litigation over the question of whether nominal payment plans met the con-

firmation requirement that a plan be proposed in good faith." 5 L. King, *Collier on Bankruptcy* ¶ 1225.04, at 1225–29 (15th ed. 1983). *See also In re Coffman*, 90 B.R. 878, 883 (Bankr. W.D.Tenn.1988); *In re Nielsen*, 86 B.R. 177, 178 (Bankr.E.D.Mo.1988); *In re Willingham*, 83 B.R. 552, 553 (Bankr.S.D.Ill.1988).

Section 1225(b), although other reasons for the provision have been discussed including the dramatic increase in consumer bankruptcies, the billions of dollars' worth of debt discharged each year (which in turn means higher interest rates and prices), as well as the significant number of debtors capable of paying off debts with future income. *Matter of Schwarz*, 85 B.R. 829, 831 (Bankr.S.D.Iowa 1988), *citing* Irvine A. Breitowitz, *New Developments in Consumer Bankruptcies: Chapter 7 Dismissal on the Basis of "Substantial Abuse,"* 59 Am.Bankr.L.J. 327, 336–37 (1985). Section 1225(b) was designed by Congress to provide some type of protection to unsecured creditors while offering Chapter 12 debtors an opportunity to obtain plan confirmation. *In re Coffman*, 90 B.R. at 883.

### C. The Disposable Income Requirement of Section 1225(b)(1)(B)

The issue of disposable income frequently arises in the context of an alternative, potential route to obtaining confirmation. Disposable income, therefore, is a confirmation issue. At this stage, the actual amount of disposable income to be received, if any, is completely unknown and so the plan is proposed and confirmed based upon a commitment to apply all of the debtor's projected disposable income toward payments under the plan. Even though the projection may be uncertain, the commitment is not. The commitment is the real protection intended by Congress. The word "projected" simply refers to a confirmation standard "and is not a part of the definition of disposable income." *In re Wood*, 122 B.R. at 114.

> Although section 1225(b)(1)(B) speaks of "projected" disposable income being applied to [a] plan, literal construction and application of section 1225(b)(1)(B) would ignore the reality of farm reorganizations. That is, cash flow projections rarely predict with any degree of precision the income an operation will generate and the expenses it will incur. The weather, government policies and fluctu-

ating markets make forecasting bottom lines difficult at best.

*Matter of Schwarz*, 85 B.R. at 831.

■ Once the debtor's plan incorporates a disposable income commitment, the court will "exercise its informed and independent judgment when called upon to confirm a [p]lan" and evaluate whether the projection has been made fairly and in good faith. *In re Bodine*, 113 B.R. 134, 136 (Bankr. W.D.N.Y.1990).

> "Good faith" requires honesty of intention in the debtor's [sic] conduct in the submission, approval and implementation of their plan. It requires a determination by the Court that the debtors have not misrepresented facts in their plan, unfairly manipulated the Bankruptcy Code or otherwise proposed their Plan in an inequitable manner.

*Id., citing In re Johnson*, 708 F.2d 865, 868 (2d Cir.1983). And if the court determines the plan provides for full payment of the allowed amount of each unsecured claim or that the plan contributes all of the debtor's disposable income during the plan period towards payment of unsecured claims, then confirmation is attainable. If the plan does not provide either alternative, the plan is defective and not confirmable. *In re Rockefeller*, 109 B.R. 725, 727 (E.D.Mich.1989); *Farm Credit Bank v. Hurd*, 105 B.R. 430, 431 (W.D.Tenn.1989); *In re Fleshman*, 123 B.R. at 847; *In re Kloberdanz*, 83 B.R. 767, 774 (Bankr.D.Colo.1988).

Under Section 1225(b)(1)(B), the commitment that begins at confirmation extends for the three-year period of the plan, or longer, if the court so orders and for this reason the issue of disposable income also frequently arises long after plan confirmation. The speculative, untested nature of the projections makes it necessary to consider actual, "after the fact" post-confirmation income and expenses incurred in order to calculate actual amounts of disposable income. *In re Fleshman*, 123 B.R. at 845; *In re Wood*, 122 B.R. at 115. "The court will not make final disposable income determinations strictly on the basis of cash flow projections." *Matter of Schwarz*, 85 B.R. at 831. Disposable income is therefore an

issue that can linger throughout the duration of the plan.

■ Disposable income is defined by the Bankruptcy Code as:

"[I]ncome which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; or

(B) for the payment of expenditures necessary for the continuation, preservation, and operation of the debtor's business."

11 U.S.C. § 1225(b)(2). Legislative history adds nothing to further clarify this definition and without further guidance, courts have interpreted and calculated disposable income in a variety of ways.[9] The definition certainly contemplates a subjectively calculated figure. *In re Coffman*, 90 B.R. at 884. And the subjectiveness has been narrowed only slightly with the majority view that "reasonableness" is the basic disposable income test. *In re Wood*, 122 B.R. at 115; *In re Rott*, 94 B.R. 163, 166–67 (Bankr.D.N.D.1988); *In re Coffman*, 90 B.R. at 884.

Once calculations based on actual figures show either a reduction or increase in disposable income as compared to the projections made at confirmation, some courts find that plan modification is the perfect mechanism for handling the unforeseen variances between projected and actual income, while other courts have ruled that no plan modification is needed since the plan requires payments utilizing all disposable income, no matter what the actual amount is or how much it fluctuates. *See Farm Credit Bank v. Hurd*, 105 B.R. at 432; *In re Wood*, 122 B.R. at 115; *Matter of Schwarz*, 85 B.R. at 832; Mindy L. Silver, *The Disposable Income Test: An Attempt Toward Uniformity*, 4 Bankr.Devs.J. 229 (1987).

■ In sum, the disposable income requirement of 11 U.S.C. § 1225(b) is one alternative route to achieving plan confirmation despite the objections of the Chapter 12 trustee or the holder of an allowed unsecured claim. The alternative requires the debtor to make a commitment under the plan to apply all disposable income, as defined by 11 U.S.C. § 1225(b)(2), for payments under the plan. The purpose is to enable plan confirmation despite objection, by giving unsecured claimants a fair level of protection. The plan must contain a disposable income clause proposed in good faith, based upon untested, projected calculations of disposable income. Section 1225(b)(1)(B) is a standard for confirmation, not a definition of disposable income. The definition, for the limited purposes of Section 1225(b), is provided in Section 1225(b)(2) and is a subjectively calculated figure based on reasonable expenses. Finally, because the commitment endures throughout the three-year period or longer, if the court so orders, the issue of disposable income does not end with confirmation. Disposable income is a substantive, integral part of the plan, making actual income and expense figures subject to review to ensure that all disposable income is used to make payments under the plan. *In re Wood*, 122 B.R. at 114–15.

*Analysis*

Given the purpose and the context in which the issue of disposable income arose in this case, the initial question is whether this Court properly confirmed the Debtors' plan under 11 U.S.C. § 1225(b). An analysis of the events leading to confirmation will show that the Chapter 12 plan was properly confirmed.

■ Both PCAM and FmHA were secured claimants as well as "holder[s] of ... allowed unsecured claim[s]," and both "object[ed] to the confirmation of the plan" as required by 11 U.S.C. § 1225(b)(1). "The holder of a secured claim has no right to

---

**9.** For example, in *Farm Credit Bank v. Hurd*, 105 B.R. 430, 432 (W.D.Tenn.1989), and in *In re Kuhlman*, 118 B.R. 731, 739 (Bankr.D.S.D.1990), the courts held that a case-by-case approach, rather than a set, standard formula, was the proper way to calculate disposable income. Other courts believe disposable income should be calculated using a "totality of circumstances" approach. *In re Coffman*, 90 B.R. at 883.

raise an objection to confirmation and invoke this additional confirmation requirement unless the holder also holds an unsecured claim," [10] and in this case, both creditors had the right to raise an objection, and both creditors exercised that right. 5 L. King, *Collier on Bankruptcy* ¶ 1225.04, at 1225–29 (15th ed. 1983). The Court is convinced that the objections properly triggered the additional confirmation requirements of Section 1225(b).

■ As to the substance of the objections made, the Bankruptcy Code does not require the creditor to identify itself with the magic phrase, "holder of an allowed unsecured claim," nor is there any requirement that the objection specifically address the plan's treatment of the unsecured portion of the creditor's claim. Those refinements are simply not a part of the statute's plain meaning. Following the U.S. Supreme Court's reliance on the "plain meaning rule," this Court agrees that "the plain language of the Bankruptcy Code ... is our determinant." *Patterson v. Shumate*, — U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). The plain language of Section 1225(b)(1) indicates that the objections filed by PCAM and FmHA were enough to require Debtors to fulfill the added confirmation requirements. Where a statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), *citing Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).

■ Debtors did in fact overcome the extra hurdle to confirmation by incorporating a disposable income provision into the proposed plan. The provision, based on a zero dividend or distribution to the unsecured class, was a commitment to apply disposable income as defined in Section 1225(b)(2). It was a commitment made in good faith and the Court, in its discretion, determined that a zero projection was not inappropriate. If it had, the plan would have been defective and confirmation could not have occurred. The United States Trustee, in its objection, required a "commitment" of disposable income and the Court was informed by the Chapter 12 Trustee that this issue had been resolved, as had all other objections except the valuation issue, and, therefore, confirmation was recommended. For all these reasons, the Court concludes that the Chapter 12 plan was properly confirmed.

■ Having determined that confirmation was proper, the final question is whether the Debtors' commitment to apply disposable income was negated or somehow nullified when the proposed plan projected no disposable income. The answer is no. The Court does not believe Congress intended to allow a debtor to eliminate its disposable income commitment with a zero disposable income projection. Such a conclusion would be an attempt to interpret the plan in a way which would have made it nonconfirmable at the time it was proposed. Such a loophole would, in effect, permit a debtor to ignore the disposable income commitment, accumulate an unreasonably large reserve of disposable income during the life of the plan, and then obtain a windfall at the time of discharge. In light of the purpose behind the disposable income requirement, the drafters of Section 1225(b)(1)(B) certainly did not intend that result.

The Court believes the plan in this case was proposed in good faith, proper objections were made to trigger the net disposable income requirement, and Debtors made a commitment to apply disposable income toward payments under the plan based on a beginning projection of no disposable income. The Court believes plan confirmation was proper and valid. The net result

---

**10.** Secured creditors are protected by the requirements of Section 1225(a)(5)(B), which states that the plan must provide that "the holder of such claim retain the lien securing such claim" and that the value of the property to be distributed, as of the effective date of the plan, must not be "less than the allowed amount of such claim." 11 U.S.C. § 1225(a)(5)(B)(i) and (ii). If the plan does not provide secured creditors with this method of treatment, alternative treatment is permitted if "the debtor surrenders the property securing such claim to such holder." 11 U.S.C. § 1225(a)(5)(C).

is that the obligation to apply disposable income as defined by 11 U.S.C. § 1225(b)(2) continues to exist.

CONCLUSION

The issue presented in this case is whether an obligation exists to pay net disposable income when a plan is confirmed over the objection of the holder of an allowed unsecured claim by providing that all of the debtor's "projected" disposable income to be received during the plan period will be applied to make payments under the plan, but when the debtor projects no disposable income.

In order to obtain plan confirmation over objection of the holder of an unsecured claim or over objection of the Chapter 12 trustee, 11 U.S.C. § 1225(b)(1)(B) requires the debtor's plan to apply disposable income to plan payments during the life of the plan. Thus, disposable income is a confirmation issue and raises a question of commitment. Once the commitment is made, based on projected figures, actual disposable income will no doubt fluctuate throughout the duration of the plan. But the commitment to apply all disposable income, as defined by 11 U.S.C. § 1225(b)(2), is unfaltering. Section 1225(b) provides not only a standard by which to base plan confirmation, but also a definition of disposable income that makes this subject an integral part of the Chapter 12 plan of reorganization and, therefore, can become an issue throughout the three-year period of the plan, even at discharge.

The Court concludes that in this case, the Chapter 12 plan of reorganization was properly confirmed by the Court over objections of two holders of allowed unsecured claims because the plan made a commitment to apply all disposable income to make payments under the plan according to 11 U.S.C. § 1225(b)(1)(B) and according to the definition of disposable income found in Section 1225(b)(2). Therefore, the Debtors were always obligated, and continue to be obligated, to apply disposable income to make payments under the plan, even though their commitment was based on a zero projection of anticipated disposable income. The Chapter 12 Trustee shall supply an appropriate order.