**In re Dean E. GAGE and Jeanine A. Gage, Debtors.**

**Bankruptcy No. 87–40634–PKE.**

United States Bankruptcy Court, D. South Dakota, S.D.

March 2, 1993.

John Harmelink and Wanda Howey–Fox, Harmelink & Fox Law Office, Yankton, SD, for debtors.

Bruce J. Gering, Office of the U.S. Trustee, Sioux Falls, SD, for U.S. Trustee.

John C. Quaintance, Quaintance, Johnson & Starnes, Sioux Falls, SD, for Farm Credit Bank of Omaha.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

The matter before the Court is objections to a Rule 2016(a) Application for Compensation and Reimbursement filed by Debtors' counsel, Yankton, South Dakota, Attorneys John Harmelink and Wanda Howey–Fox. Objections were filed by the United States Trustee [hereinafter "U.S. Trustee"] through Sioux Falls Attorney Bruce J. Gering and by Farm Credit Bank of Omaha [hereinafter "FCBO"] through Sioux Falls Attorney John C. Quaintance. The objections require the Court to determine whether services rendered to resolve issues of net disposable income yield any tangible benefit to the bankruptcy estate, such that services and expenses provided by Debtors' counsel may be compensable from a Chapter 12 bankruptcy estate. This is a core proceeding under 28 U.S.C. § 157(b)(2), and this ruling shall constitute Findings of Fact and Conclusions of Law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL AND FACTUAL BACKGROUND

Debtors Dean E. and Jeanine A. Gage sought financial reorganization of their family farming operation on October 28, 1987. A Chapter 12 Plan of Reorganization was filed January 27, 1988, a confirmation hearing was held March 16, 1988, and an Order of Confirmation was entered April 5, 1988. By the end of March, 1992, Debtors believed they were in a posture for discharge and, accordingly, filed and served the Final Report and Account. This event, however, triggered several objections to discharge.[1]

On November 23, 1992, Debtors' counsel filed an interim fee application seeking compensation from the estate for services and reimbursement of necessary expenses for the period of October 12, 1987, through November 15, 1992. Accompanying the application is a detailed statement of the services rendered, time expended, and expenses incurred, along with the amounts requested.[2] The applicants seek compensation in the sum of $6,725.25, sales tax in the sum of $339.25, and reimbursement of expenses in the sum of $730.79, less payments received in the amount of $6,213.00, for a total sum of $1,582.29.

On December 11, 1992, FCBO filed an objection to all fees and expenses subsequent to April 27, 1992, on the grounds that those services were performed in response and resistance to the objection to discharge. Relying on *In re Brandenburger*, 145 B.R. 624 (Bankr.D.S.D.1992), FCBO contends these particular services, which merely defend Debtors' position regarding the availability of net disposable income as indicated by the Final Report and Account, should not be approved as expenses of the estate, but should be segregated and approved as expenses of the Debtors individually. In a similar objection filed December 30, 1992, the U.S. Trustee argues that resolving issues of net disposable income provides no benefit to the Chapter 12 estate and, in accord with *In re Reed*, 890 F.2d 104 (8th Cir.1989), only services that provide a benefit to the estate may be compensated from the estate.

---

**1.** On April 24, 1992, an objection to entry of discharge was filed by FCBO, and a supplement objection was filed November 3, 1992. The Chapter 12 Trustee did not file any objection to discharge, but did file a response to FCBO's supplement objection. The original trial date of November 5, 1992, was continued until January 28, 1993, and the issue of whether any net disposable income exists to be applied to make payments under Debtors' Chapter 12 plan before becoming eligible for discharge is currently under advisement.

**2.** Federal Rule of Bankruptcy Procedure 2016(a) governs the procedural aspects of applying for compensation from the estate.

A hearing was held January 13, 1993, at which time the Court heard oral argument and took the matter under advisement. At that time, the parties suggested to the Court that perhaps filing the Final Report and Account should be the "bright line" or benchmark that bars debtor's counsel from receiving compensation from the estate. FCBO believes there is a distinction to be made between fees rendered and expenses incurred prior to the filing of the Final Report and Account as compared to costs associated with resisting efforts to recover net disposable income after the Final Report and Account has been filed. FCBO suggests that, initially, the Court should approve all appropriate fees and then designate the source of fee payment after a determination of net disposable income has been made. If the Court determines net disposable income exists, debtor's counsel is not entitled to compensation from the estate inasmuch as debtor failed to use all net disposable income to make plan payments as required by 11 U.S.C. § 1225(b).

The U.S. Trustee contends filing the Final Report and Account is the appropriate cutoff point for allowing compensation from the estate and, as such, debtor's counsel should never bill the estate for services performed after this point in time. And even though net disposable income is the kind of issue that typically arises after the Final Report and Account is filed, there is no local rule in this district that requires debtor's counsel to defend that issue. Therefore, services allocated to this issue are, in essence, just efforts to obtain a discharge, an achievement that benefits the debtor, not the estate. In this case, the U.S. Trustee concludes that services provided after April 6, 1992, and costs incurred after April 7, 1992, should be borne by Debtors and not this bankruptcy estate.[3]

Debtors' counsel, on the other hand, believes there is no "bright line" to be drawn. To do so would be unfair since every Chapter 12 debtor's counsel is required to file the Final Report and Account and respond to any and all issues raised concerning the existence of net disposable income. That is simply the process that must be followed if a debtor is to obtain a Chapter 12 discharge. For that reason, it is unfair to summarily deny compensation from the estate when net disposable income becomes an issue after the Final Report and Account is filed. Debtors' counsel adds that, unlike the cases cited in support of the objections, there is no fraud, deceit, or other wrongful conduct in this particular case that would justify not paying these fees from the estate. Debtors believe their efforts have been and continue to be an aid to the administration of the case, therefore, the issue is really whether or not the costs of a discharge are considered a cost of administering the case rather than whether or not the estate should be the source of payment compensation.

## DISCUSSION AND ANALYSIS

### 1. A "Bright–Line" Cutoff for Compensation From the Estate

In addition to operating the family farm, the Chapter 12 debtor-in-possession is required to calculate, prepare, compile, and submit financial reports to the Chapter 12 Trustee. These documents include monthly reports, annual reports summarizing the monthly reports, annual reports of operation, and, eventually, the Final Exit Report and Final Report and Account. These various reports reveal amounts and sources of income, amounts and nature of expenses, capital expenditures, livestock and crop yields, and projections, in addition to summarizing plan payments made either directly to the creditors or to the Chapter 12 Trustee. The debtor is required to sign these reports as verification of completeness, accuracy, and truthfulness.

Assuming the plan is confirmed with the commitment to apply all net disposable income toward making plan payments, the debtor must operate the farm and deter-

---

**3.** In its objection, the U.S. Trustee calculates $1,687.95 plus sales tax equals the amount of services and $102.79 equals the amount of costs that should be borne by the Debtors individually.

mine what income can be disposed of and made available for payments under the plan. According to the Code, disposable income is 1) income *not* "reasonably necessary" for the maintenance or support of the debtor and his dependents; and 2) income *not* "reasonably necessary" for the continuation, preservation, and operation of the farming business. 11 U.S.C. § 1225(b)(2). It is true, payments of disposable income are no different than other plan payments and the debtor is obligated to make them in compliance with the confirmed plan. *In re Kuhlman*, 118 B.R. 731, 738 (Bankr.D.S.D.1990). But calculating how much net disposable income is available for payments under the plan is a subjective determination. *In re Rowley*, 143 B.R. 547, 555 (Bankr.D.S.D.1992); *see also In re Fleshman*, 123 B.R. 842, 845 (Bankr.W.D.Mo.1990), *citing In re Kuhlman*, 118 B.R. 731 (Bankr.D.S.D.1990); *In re Coffman*, 90 B.R. 878, 885 (Bankr. W.D.Tenn.1988). It is only natural then, to anticipate that the debtor will make, and is entitled to make, management decisions based upon his own subjectivity, which will include retaining sufficient funds necessary to run the farming operation. *In re Coleman*, 104 B.R. 338, 345 (Bankr. D.Mont.1989). Just as the Court may be required to make a case-by-case determination of net disposable income based on the totality of circumstances, so, too, must the family farmer during the life of the plan of reorganization. *In re Schmidt*, 145 B.R. 983, 987 (Bankr.D.S.D.1991); *In re Wood*, 122 B.R. 107, 115 (Bankr.D.Idaho 1990); *In re Kuhlman*, 118 B.R. at 739. Naturally, this process will provide ample opportunity for disagreement and controversy. But so long as the debtor timely submits the periodic financial reports to the Chapter 12 Trustee as required, the Chapter 12 Trustee is completely aware of debtor's subjective determinations and can respond accordingly.[4]

Part of the "response" required by the Chapter 12 Trustee is found at 11 U.S.C.

§ 1202. For example, the Chapter 12 Trustee is required to:

● investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of the plan;

● file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates.

11 U.S.C. § 1202(b)(2). The Code contemplates a heavily involved Chapter 12 Trustee, and these particular investigative duties must be performed when warranted. This would mean that any issues concerning the availability of net disposable income which surface during the life of the plan should be identified and raised long before the debtor has compiled all annual reports into one Final Report and Account. The Chapter 12 Trustees' own manual reinforces this notion and reiterates the Code's prescriptions:

● Where a debtor's confirmed plan contains a commitment of disposable income pursuant to section 1225(b)(1), the trustee must first make the necessary review to determine to what extent disposable income exists and, secondly, ensure its *timely* payment under the confirmed plan. (Emphasis added.)

● A trustee must require debtors to calculate disposable income in those instances where its payment has been committed under the confirmed plan, and ob-

---

**4.** "The trustee must review the financial and other reports transmitted to the trustee by chapter 12 debtors and must police the requirement that debtors file periodic financial reports."

U.S. Dept. of Justice, Executive Office for U.S. Trustee, "Handbook for Chapter 12 Standing Trustees," p. 2 (1992).

ject to any item that appears inaccurate or unreasonable.

● The ultimate determination of disposable income must be made on a case-by-case basis by the debtor and the trustee, and should result in agreement or an alternative recommendation by the trustee of a specific amount for distribution to the unsecured creditors. The trustee's analysis should include a review of the debtor's Statement of Income and Expenditures, monthly financial statements, Annual Report, and tax returns.

U.S. Dept. of Justice, Executive Office for U.S. Trustee, "Handbook for Chapter 12 Standing Trustees," pp. 42–44 (1992).

Without a doubt, the debtor and the Chapter 12 Trustee are two key players in the "game" of net disposable income. *"Disposable Income in Chapter 12: Button, Button, Who's Got The Button,"* Hon. Irvin N. Hoyt, Chief U.S. Bankruptcy Judge, D.S.D. (Farm, Ranch, and Agri-Business Bankruptcy Institute, Oct. 8–10, 1992, at p. 6). However, if one of those two key players is not an active participant until the other player is led to believe the "game" is finally over, is it fair that the disadvantaged player should be threatened with the possibility of having to bear the cost of defending himself in "overtime" when it is apparent that the opponent's own acquiescence has declared a winner? No. That would leave the debtor with two inequitable options: either submit to and be required to pay for long, drawn-out litigation involving expert testimony concerning technical theories of accounting and proper interpretations of how to reconcile financial data on varying reports, or, worse yet, choose the path of least resistance and "give in" to some sort of settlement negotiation just to bring the issue to a close.

Fortunately, this sort of debtor shakedown was never contemplated by Chapter 12's fast-track, streamlined method of providing relief to the family farmer. For these reasons, the Court cannot subscribe to a rule that would use the debtor's act of filing the Final Report and Account as an absolute "bright line" with which to deny debtor's counsel compensation from the bankruptcy estate.

2. *"Benefit to the Estate" Required for Compensation From the Estate*

■ Before the Court may determine whether fees and expenses sought are "reasonable" under 11 U.S.C. § 330(a),[5] an analysis of the professional services performed by debtor's counsel must show that a real, tangible benefit was received by the estate so that the fees can be recoverable from the estate. *In re Reed,* 890 F.2d at 105. This benefit analysis is consistent with the Bankruptcy Act of 1898, which required services to be rendered in "aid of the administration of the estate" in order to be compensable from the estate. 2 L. King, *Collier on Bankruptcy* ¶ 330.04, at 330–28 (15th ed. 1992).

In *Reed,* the Eighth Circuit disallowed the debtor's attorney's fees for services rendered in defending a nondischargeability action since those services only benefited the debtor. *In re Reed,* 890 F.2d at 105. "An attorney fee application in bankruptcy will be denied to the extent the services rendered were for the benefit of the debtor and did not benefit the estate." *Id.* at 106. Similar to *In re Reed,* other courts applying this benefit analysis have illustrated what is *not* a "benefit to the estate" rather than defining what *is* a benefit to the estate. *E.g., In re Brandenburger,* 145 B.R. at 629–30 (no benefit to the estate for resisting objections to discharge or revocation of discharge for alleged fraud); *In re C & A Enterprises, Inc.,* 132 B.R. 303, 309 (Bankr.W.D.Pa.1991) (no benefit to the es-

---

**5.** Section 330(a) is the provision that governs officer compensation and, in pertinent part, states:

> [T]he court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—
>
> (1) reasonable compensation for actual, necessary services rendered ... based on the

nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

> (2) reimbursement for actual necessary expenses.

11 U.S.C. § 330(a).

tate for debtor's counsel's work done after conversion from Chapter 11 to Chapter 7); *In re Stoecker*, 114 B.R. 965, 970 (Bankr. N.D.Ill.1990) (no benefit to the estate when debtor's counsel performs criminal defense activities); *In re Alderson*, 114 B.R. 672, 681 (Bankr.D.S.D.1990) (no benefit to the estate when debtor's counsel knew or should have known that a Chapter 12 case would be converted to Chapter 7). In other words, case law does not affirmatively identify what legal services yield an estate benefit for purposes of compensation from the estate.

In *In re Brandenburger*, debtors' counsel filed a Rule 2016(a) Final Application for Compensation and Reimbursement, and the U.S. Trustee made the same objection as in the case *sub judice:* services rendered to determine whether debtors had to pay net disposable income were not services that benefited the estate and, as such, could not be compensated from the estate. *In re Brandenburger*, 145 B.R. at 626. In its analysis, the *Brandenburger* court said that complying with the local rules governing a Chapter 12 discharge, which, in general, entail the mechanics of preparing and filing the Final Report and Account, were services entitled to be compensated from the estate "because they are necessary for the administration of the estate." *Id.* at 629. The court held that an estate benefit could be either monetary or non-monetary. *Id.* at 628. However, the court drew a line whenever discharge is contested: "[T]he remaining services are not compensable from the estate because securing a discharge is for the debtor's benefit, not the estate's." *Id.* at 629–30.

This same court subsequently contrasted the post-confirmation services in *Brandenburger*, described as representation "during a contested discharge proceeding," when it ruled that post-confirmation services which addressed and cured delinquent plan payments were a benefit to the estate since they were "necessary to the administration" of the case. *In re Smith*, Bankr. No. 87–30110, slip op. at 3 (Bankr.D.S.D. Oct. 5, 1992). In *Smith*, pre-discharge liti-

gation arose when debtors became delinquent on plan payments. *Id.* at 1. The issue was resolved, debtors received their discharge, counsel applied for fee compensation from the estate, and an objection was filed stating the services did not benefit the estate. *Id.* at 2. In its decision, the *Smith* court stated: "[T]he Court expects the debtor's counsel to aid in the resolution of those post-confirmation problems just like it expects the debtor's counsel to insure that the debtor's final report and account is filed and properly noticed." *Id.* at 3. "Post-confirmation services which benefit the estate include those that are necessary for the administration of the estate." *Id.* at 2–3.

It appears that instead of using the debtor's act of filing the Final Report and Account as the "bright line" or benchmark to deny compensation from the estate as suggested in the case at bar, perhaps the court in *Brandenburger* and *Smith* has used the act of filing an objection to discharge as its own "bright line" to determine whether or not services rendered by debtor's counsel provide a benefit to the estate. If the services are rendered to resolve post-confirmation problems before an objection to discharge is filed, there is a benefit to the estate since resolution of post-confirmation problems is necessary for the administration of the case, therefore, they may be compensable from the estate. On the other hand, if efforts to resolve post-confirmation problems are rendered after an objection to discharge has been filed, there can be no benefit to the estate because those efforts simply pursue discharge, therefore, compensation from the estate must be denied. This Court is not convinced that such black and white distinctions should be made concerning fee applications.

### 3. *"Full Service Representation"*

When a debtor obtains professional services from an attorney, representation is generally anticipated for the long haul— the client expects counsel to give "full service" representation for all proceedings relating to the case.[6] The Bankruptcy Code

---

6. S.D.C.L. § 16–18–31 states, "No attorney who    has appeared of record in any civil or criminal

and Rules also contemplate this notion of "full service" treatment. In reorganization cases, the debtor has a need to obtain representation to resolve problems and formulate strategies necessary for plan confirmation, as well as a need for representation to address and resolve post-confirmation issues such as net disposable income, because their resolution is essential to proper completion of all plan requirements. The debtor relies on legal counsel as the most effective and efficient way of ensuring all reorganizational requirements and goals have been satisfied.

Disposable income is primarily an issue for confirmation, but due to the subjective nature of defining and calculating net disposable income, it is capable of being brought back to life during the plan period due to a whole host of life-giving measures: requests for discovery, motions for plan modification, motions to dismiss for material default to a term of a confirmed plan, as well as various methods of disputing what constitutes a "reasonable" expense. *In re Rowley,* 143 B.R. at 557. *See* 11 U.S.C. § 1208(c)(6); 11 U.S.C. § 1229; *see also Farm Credit Bank v. Hurd,* 105 B.R. 430, 432 (W.D.Tenn.1989); *In re Rott,* 94 B.R. 163, 167 (Bankr.D.N.D.1988). Absent fraud or concealment, however, this Court believes post-confirmation problems concerning net disposable income can and should be raised and resolved before the debtor places himself in a posture for discharge by filing the Final Report and Account. The highly compensated Chapter 12 Trustee receives evidence regarding the debtor's farming operation, and based on this financial data, or the lack of it, the Chapter 12 Trustee is required to promptly investigate and raise all appropriate issues concerning payments of net disposable income. Understandably, the Chapter 12 Trustee encounters various types of farming operations that require flexibility in deciding when to raise the issue, but if not raised on an annual basis, the issue should, at least, be raised during the final phase(s) of the plan period. And even though the local rules of this district permit an objecting party to raise this issue after the Final Report and Account has been filed,[7] if, in fact, there is a genuine issue, the Chapter 12 Trustee should have "caught it" and raised it first.

■ No matter when the issue is raised, it is important to remember that reorganization under Chapter 12 is designed to assist the family farmer by allowing him to successfully complete a plan of payments that enables him to keep his land and continue his farming operation. H.R.Rep. No. 958, 99th Cong., 2d Sess. 48 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227, 5249; *see In re Vernon,* 101 B.R. 87, 89 (Bankr.E.D.Mo. 1989); *In re Welch,* 74 B.R. 401, 405 (Bankr.S.D.Ohio 1987); *In re Mary Freese Farms,* 73 B.R. 508, 509 (Bankr.N.D.Iowa 1987). As part of the Chapter 12 reorganization process, the debtor may be required to explain, justify, defend, and even litigate the issue of net disposable income, but this should not result in an automatic penalty against the debtor. It is simply the natural result of a Code provision that does not lend itself to a precise formula: what a debtor considers to be income "not reasonably necessary" for personal and business expenses is likely to arouse a different interpretation from a Chapter 12 Trustee or creditor. Clearly, this process of resolving the question of net disposable income is very distinguishable from services used to defend or resist nondischargeability adversary proceedings as well as other types of services shown by case law to be of benefit solely to the debtor.

The debtor is in the best position to explain and justify his recordkeeping methods and financial records, but "to a farmer debtor unfamiliar with the process of doing

---

proceeding shall be permitted to withdraw in any pending action except by order of the court after notice to all parties concerned." *See also* Ch. 16–18 Appx., DR 2–110 concerning appropriate circumstances warranting attorney withdrawal.

7. Local Bankruptcy Rule 309(I)(3) provides that once the debtor has filed and served the Final Report and Account, "any party objecting to entry of discharge on the grounds that the debtor has failed to complete all plan payments ... shall file an objection to discharge on or before thirty (30) days after service...."

battle in bankruptcy, it would not be far-fetched to hypothesize that the debtor would defer to his retained counsel the task of setting legal strategy with the ultimate goal of 'saving the farm.'" *Weiszhaar Farms, Inc. v. Livestock State Bank,* 113 B.R. 1017 (D.S.D.1990). And when the debtor defers to legal counsel, "full service" representation does not permit counsel to "jump ship" for fear that compensation may be denied from the estate simply because net disposable income has been raised with an objection to discharge. "The Court wants to encourage debtors' counsel not to abandon their debtors when creditors or the case trustee have questions and concerns during the course of the plan." *In re Brandenburger,* 145 B.R. at 631. Or, this Court would add, when questions and concerns about net disposable income are not raised until the debtors have been led to believe the course of the plan is over.

### DECISION

It is well-known that matters concerning fee applications require the applicant to carry the burden of proof. *In re Grenoble Apartments, II,* 145 B.R. 43, 45 (Bankr.D.S.D.1992); *In re Fox,* 140 B.R. 761, 763 (Bankr.D.S.D.1992), *citing In re Yankton College,* 101 B.R. 151, 157–58 (Bankr.D.S.D.1989). Fees are properly payable from the estate when a commensurate benefit to the estate is provided. *In re Reed,* 890 F.2d at 105. A fee award is "committed to the sound discretion of the bankruptcy court," which, in part, requires the court to look at both court rule and case law. *In re Cascade Oil Co., Inc.,* 126 B.R. 99, 104 (D.Kan.1991). Court rule, as discussed above, requires the applicant to adhere to the requirements of Bankruptcy Rule 2016(a). In this case, the applicants have met this requirement by providing a detailed statement setting forth the services rendered, time expended, and expenses incurred, as well as the amount requested. In this circuit, case law requires that a benefit be bestowed upon the estate before an applicant receives compensation from the estate, and in this district, it has been held that services necessary for the admin-istration of the estate provide such a benefit. The question, then, is whether services rendered to resolve the issue of net disposable income were necessary for the administration of this estate. In response, the Court finds that the services rendered by Debtors' counsel were necessary to resolve the post-confirmation problem of net disposable income and, as such, were necessary to the complete and proper administration of this case. As an aid to the administration of this case, the Court concludes a benefit was provided to the estate, therefore, the requested fees and expenses are compensable from this estate.

### CONCLUSION

This case presents no allegations or evidence of fraud, concealment, or other wrongful conduct. Resolving the subjective, post-confirmation issue of whether debtor has paid all available net disposable income is part of the reorganizational process that provides assurance to all parties interested in the bankruptcy estate that all plan payments have been properly completed. It is an issue that can be and should be identified and resolved prior to the time of discharge by way of the supervisory and monitoring responsibilities of the Chapter 12 Trustee. Absent allegations of fraud or concealment, this Court believes that a Chapter 12 debtor should not be abandoned by counsel nor required to pay for representation during this "reconciliation" process simply because an objection to discharge, filed after the Final Report and Account is filed, is the method and timing selected to raise the issue of net disposable income.

The Court shall enter an appropriate order.