In re AGRIBANK, FCB, Appellant,

v.

Charles E. HONEY and Wanda L. Honey, Appellees.

In The Matter of Charles E. HONEY and Wanda L. Honey, Debtors.

Civ. No. 93–5122–CV–SW–1.
Bankruptcy No. 87–01207–SW–12–ABF.
Adv. No. 93–3010–SW–12–ABF.

United States District Court,
W.D. Missouri,
Southwestern Division.

May 3, 1994.

James Gregory Powell, Joplin, MO, for plaintiff.

Norman Rouse, Joplin, MO, for defendants.

Richard V. Fink, Kansas City, MO, for interpleader.

## ORDER

WHIPPLE, District Judge.

This matter is before the Court on appeal of the bankruptcy court's Memorandum Opinion, issued on September 17, 1993. The Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a). The primary issues involved in this appeal concern a $130,000 inheritance to which the debtors became entitled, but did not receive, during the course of their five-year bankruptcy plan. After due consideration of the briefs submitted by the parties,[1] for the reasons expressed below, the Court finds that the bankruptcy court erred in not identifying said inheritance as disposable income, available to pay the claims of the unsecured creditor. Accordingly, the ruling below is reversed, and the case is remanded for further proceedings consistent with this Order.

### I. Background

On March 20, 1987, Debtors Charles and Wanda Honey filed a petition for relief under the Chapter 12 of the Bankruptcy Code[2] providing for the adjustment of debts of fam-

---

1. Appellant/Unsecured Creditor Agribank, FCB ("Agribank") filed its brief on December 21, 1993. Appellees/Debtors Charles and Wanda Honey ("Debtors") filed their brief on January 31, 1994, to which Agribank filed a reply brief on February 11, 1994.

2. The Bankruptcy Code is 11 U.S.C. § 101 et seq. References to section numbers are references to sections in the Bankruptcy Code.

ily farmers. A reorganization plan ("Plan") was confirmed by the bankruptcy court on April 11, 1988. Under the Plan, Debtors were required to make payments to secured creditors Boatmen's Bank of Carthage ("Boatmen's") in the amount of $115,187.95 over the course of five years, and Agribank in the amount of $266,848.00 over thirty years. In addition, Debtors were to make payments to Agribank on an unsecured debt of $169,399.83. Concerning this unsecured debt, Debtors were required to pay Agribank the greater of $27,000 or all of their disposable income over five years.

On June 29, 1992, Debtor Charles Honey's father, Gerald Honey, died, and Charles Honey was named as one of the co-administrators of the probate estate valued at $446,012.88, the bulk of which was real estate worth $308,325.00. The estate also consisted of mortgages and bonds valued at $92,860.00, bank accounts, insurance and money in the amount of $13,627.88, and other personal property worth $31,200.00. Debtors were entitled to receive 7/24ths of the estate, an amount in excess of $130,000.00.[3] The estate was admitted to probate in October of 1992, but the inheritance was not distributed to Debtors during the pendency of the Plan.

This five-year Chapter 12 Plan was set to conclude in April of 1993. On May 5, 1993, Debtors filed a final accounting and distribution report stating that Boatmen's had been paid the sum of $118,300.00, and Agribank had been paid $150,914.50 on its secured claim and $25,000 on its unsecured claim. On that same day, the bankruptcy court approved the final accounting, granted discharge and gave creditors thirty days in which to file objections to said ruling. On May 24, 1993, Agribank filed an adversary action objecting to discharge and requested a modification of the Plan to take into account the inheritance. In the alternative, Agribank sought to convert the case to one under Chapter 7, alleging that Debtors had committed fraud by failing to supplement their schedule to include the inheritance and by

executing a separate agreement with Boatmen's extending the time for repayment of the Boatmen's unsecured debt beyond the five-year term of the Plan. Additionally, Agribank requested a disposable income determination for the crop years of 1992 and 1993.

While finding that the right to receive the inheritance became an asset of the bankruptcy estate because it was received postpetition but prior to its closing, the bankruptcy court denied Agribank's motion to modify the Plan so as to take account of such. Concerning Agribank's motion to convert the case to one under Chapter 7, citing *Graven v. Fink*, 936 F.2d 378, 383 (8th Cir.1991), for the appropriate standard, the bankruptcy court ruled that Debtors were not guilty of a "clear pattern of deliberate fraud, perpetrated with the intent to hinder, delay and defraud the creditors of the debtors." Consequently, this motion was denied.[4] The bankruptcy court then concluded that the inheritance did not constitute disposable income and determined disposable income over the course of the Plan to be $26,062.49. Accordingly, the bankruptcy court ordered Debtors to pay $1,342.16 to Agribank, representing the difference between $27,000 and the amount paid to Agribank. The bankruptcy court then discharged the case subject to the payment of such within ten days of the date of the Opinion.

Agribank alleges the bankruptcy court committed error by: (1) denying Agribank's motion to modify the Plan to take account of the inheritance; (2) failing to categorize the inheritance as disposable income; and (3) discharging the case prior to completion of payments on the unsecured debt to Agribank and on the secured debt to Boatmen's. The Court will address each in turn, reviewing de novo the bankruptcy court's conclusions of law. *In re Apex Oil*, 884 F.2d 343, 348 (8th Cir.1989).

---

3. The Memorandum Opinion issued by the bankruptcy court states that the inheritance to which Debtors are entitled is in excess of $120,000.00. However, based on the numbers before the Court, $130,000.00 appears to be more accurate.

4. Apparently, Agribank does not appeal this determination, and thus, the Court will not address such in the body of this Order.

## II. Modification

 Modification under § 1229 is appropriate when the creditor can demonstrate there is a "substantial unforeseen or unanticipated change in the debtor's circumstances," *In re Cook*, 148 B.R. 273, 279 (Bankr. W.D.Mich.1992). A large inheritance can constitute such a change in circumstances. *In re Hart*, 151 B.R. 84, 87 (Bankr.N.D.Tex. 1993); *In re Cook*, 148 B.R. at 278 (lottery winnings); *In re Euerle*, 70 B.R. 72 (Bankr. D.N.H.1987). However, under § 1229(c), a bankruptcy court cannot modify a confirmed plan that requires the debtor to make any payments to unsecured creditors more than five years after the date of the first payment under the original confirmed plan. Thus, because Debtors' first payment under the Plan was on April 1, 1988, and Agribank's motion to modify was not filed until May 24, 1993, the bankruptcy court found that it lacked the statutory authority to modify the Plan.

Agribank argues that it was unable to file said motion within the five-year period because Debtors had failed to file a supplemental schedule to include the inheritance as required by Rule 1007(h) of the Federal Rules of Bankruptcy Procedure.[5] *See In re Euerle*, 70 B.R. at 73 (debtor obliged to amend schedule under Rule 1007(h) upon receipt of large inheritance). While it is not completely clear, the bankruptcy court apparently discounted this argument by finding that Agribank was not prejudiced by the Debtors' failure to file a supplemental schedule because Agribank had failed to file a modification motion after learning of a prior $25,000 inheritance in September of 1988.

The Court is not persuaded by this reasoning, however, because it deems the time limitation of § 1229(c), in conjunction with that of § 1222(c),[6] to be jurisdictional, *see, e.g., In re Whitby*, 146 B.R. 19, 20 (Bankr.D.Idaho.1992); *In re Hart*, 90 B.R. 150, 153 (Bankr.E.D.N.C.1988), the ruling below on this issue will not be disturbed.[7]

## III. Disposable Income

 Under § 1225(b)(1), a Chapter 12 plan will not be confirmed over the objection of unsecured creditors unless it requires the debtor to contribute for the benefit of unsecured creditors, at a minimum, all "disposable income." Disposable income is defined in § 1225(b)(2) as the income received by the debtor that is not "reasonably necessary" for the maintenance and support of the debtor's family, and the preservation and operation of the debtor's business. As noted above, the bankruptcy court found that the inheritance to which debtors became entitled during the pendency of the five-year plan did not constitute disposable income.

The case law appears to be split on this issue. Some courts, such as the bankruptcy court below, follow a Tax Code analysis in which the definition of "income" is borrowed from the Internal Revenue Code, section 102 of which states that "gross income does not include the value of property acquired by gift, bequest, devise or inheritance." 26 U.S.C. § 102(a). Courts which have followed this Tax Code approach include: *In re Fleshman*, 123 B.R. 842, 846 n. 1 (Bankr.W.D.Mo. 1990) (inheritance is not disposable income under Chapter 12); *In re Stones*, 157 B.R. 669, 670 (Bankr.S.D.Cal.1993) (bona fide loan is not "income" under Tax Code). This ap-

---

5. Fed.R.Bankr.P. 1007(h), in pertinent part, reads as follows:

 If ... the debtor acquires or becomes entitled to acquire any interest in property, the debtor shall within 10 days after the information comes to the debtor's knowledge or within such further time the court may allow, file a supplemental schedule in the ... chapter 12 family farmer's debt adjustment case....

6. This section mandates that the contents of the reorganization plan under chapter 12, "may not provide for payments over a period that is longer than three years unless the court for cause approves a longer period, but the court may not approve a period that is longer than five years."

7. While a violation of Rule 1007(h), in the case at bar, does not allow a bankruptcy court to avoid the five-year limitation of § 1229(c), the Court deems it necessary to note that the bankruptcy system cannot function effectively absent the debtor's veracity and willingness to make a full disclosure, and Rule 1007(h) plays an important role in such. *See Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir.1992); *In re Woodson*, 839 F.2d 610, 614–15 (9th Cir.1988); *In re Mascolo*, 505 F.2d 274, 278 (1st Cir.1974); *In re Euerle*, 70 B.R. at 73–74.

proach is attractive to these courts because Congress drafted both titles and it stands to reason that they should "logically mesh" together. *In re Stones,* 157 B.R. at 670. Perhaps a better justification for applying the Tax Code's definition of a term when it is lacking in the Bankruptcy Code is to promote certainty and uniformity. *See In re Way,* 120 B.R. 81, 82 (Bankr.S.D.Tex.1990) (Tax Code analysis appropriate for determination of Chapter 12 eligibility).

Other courts eschew this approach, contending that it fails to interpret § 1225(b) in the context of the legislative purpose behind Chapter 12, which the court in *In re Martin,* 130 B.R. 951, 966 (Bankr.N.D.Iowa 1991), identified as providing:

> debtors a fighting chance to save the family farm while paying to all creditors, particularly unsecured creditors, at least as much as they would receive in a Chapter 7 liquidation. One of the requirements, however, is that if the debtors receive unusually large income during the administration of the Chapter 12 case, that income must be dedicated to payment of unsecured creditors through the disposable income requirement of § 1225(b).

In addition, the *Martin* court noted that the Tax Code approach leads to anomalous results, namely making social security payments, interest on state and municipal bonds, damages received for personal injuries, and life insurance proceeds exempt from disposable income calculations. *Id.* at 965–66. Accordingly, the court found that items of income received during the pendency of a Chapter 12 plan, even if exempt under the Tax Code, constitute disposable income under § 1225(b). *Id.* at 966.

To support this holding, the *Martin* court cited a number of cases in which courts declined to follow the Tax Code analysis, namely *In re Wood,* 122 B.R. 107, 117 (Bankr.D.Idaho 1990) (tax returns not reliable method for determining disposable income under Chapter 12); *In re Tomasso,* 98 B.R. 513, 516 (Bankr.S.D.Cal.1989) (non-exempt personal injury damages are disposable

income under Chapter 13 even though nontaxable under Tax Code); *In re Kloberdanz,* 83 B.R. 767, 772 n. 19 (Bankr.D.Colo.1988) (non-taxable social security payments constitute disposable income under Chapter 12); *In re Euerle,* 70 B.R. at 73 (Chapter 13 plan modified to include inheritance). Adopting the reasoning of *In re Martin,* the court in *In re Gage,* 159 B.R. 272, 280 (Bankr.D.S.D. 1993), ruled that the definition of "income" for the purposes of the Bankruptcy Code, "is not necessarily calculated or premised on a strict Tax Code approach." Finding that the "plain language" of § 1325(b) [8] requires a determination of disposable income without reference to taxable income, the court in *In re Schnabel,* 153 B.R. 809, 815–16 (Bankr. N.D.Ill.1993), ruled that social security and pension income constitutes disposable income for the purposes of Chapter 13.

After reviewing the case law on this issue, the Court is persuaded by the reasoning of those courts which declined to follow the Tax Code analysis. The Court finds that application of this approach to situations in which debtors receive large amounts of non-taxable income, such as inheritance, would result in a profound windfall for debtors in clear violation of the legislative intent behind Chapter 12. *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy."); *Graven,* 936 F.2d at 385. As the court in *In re Schmidt,* 145 B.R. 983, 987 (Bankr.D.S.D.1991), stated, "[a] Chapter 12 debtor should be given a fresh start at discharge, not a head start." *See In re Gage,* 159 B.R. at 280 (debtor should not "accumulate an unreasonably large reserve of funds that would provide a windfall at the time of discharge").

Debtors assert that even if inheritance is properly classified as disposable income, because the inheritance in the case at bar was not distributed from the probate estate during the pendency of the five-year plan, the

---

8. If the corresponding sections of Chapter 12 and Chapter 13 are worded identically, they should be similarly construed. *United States v.*

*Arnold,* 878 F.2d 925, 927–28 (6th Cir.1989); *In re Cook,* 148 B.R. at 277.

bankruptcy court's ruling on this issue should be left intact. In support of this assertion, Debtors point to *In re Gage,* 159 B.R. at 280; *In re Hart,* 151 B.R. at 87; *In re Martin,* 130 B.R. at 966; *In re Fleshman,* 123 B.R. at 844, as standing for the proposition that the income must be "received" during the course of the plan in order to constitute disposable income. However, the Court notes that in none of these cases did the debtor become entitled to receive income during the course of the reorganization plan. Consequently, the cases cited above do not reflect a judicial position supporting Debtors on this issue.

Under § 1222(b)(7), a reorganization plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." In that the right to receive an inheritance, composed of real and/or personal property, constitutes "property of the estate," as declared by the bankruptcy court below, upon finding that inheritance is disposable income, it is irrelevant whether it is collected during the course of the Plan. Consequently, the Court rules that Debtors' right to the inheritance constitutes disposable income which Agribank is entitled to reach in satisfaction of its unsecured claims.[9]

## IV. Discharge

Under § 1228(a), a full compliance discharge is appropriate only "after completion by the debtor of all payments under the plan." If all disposable income has not been paid to unsecured creditors under the Chapter 12 reorganization plan, the debtor may not receive a discharge unless the debtor "can show that there was no available income in excess of necessary expenses." *In re Schmidt,* 145 B.R. at 986; *see also In re Gage,* 159 B.R. at 286 (discharge inappropriate if debtor has not contributed all disposable income to satisfy unsecured debt). In that the Court has ruled that the inheritance is properly categorized as disposable income, the discharge granted by the bankruptcy court must be revisited upon remand.

9. The Court notes that it is not necessary to modify the plan in order to "enforce the disposa-

## V. Remedy

Accordingly, it is ORDERED that the bankruptcy court's ruling below is REVERSED. The case is REMANDED for further proceedings consistent with this Order.

ble income provision." *In re Kuhlman,* 118 B.R. 731, 738 (Bankr.D.S.D.1990).